## DUDLEY v. JAMES.

(Circuit Court, D. Kentucky. July 27, 1897.)

No. 6,606.

1. TENURE OF OFFICE—DEPUTY MARSHALS—CIVIL SERVICE RULES.
     Since the act of May 28, 1896, as well as previously, the tenure of a deputy marshal expires, except as otherwise specially provided by law, with the term of the principal marshal; and thereafter he is not in the executive civil service of the United States, within the meaning of the civil service rules promulgated November 2, 1896.
2. JUDICIAL CONTROL OF EXECUTIVE OFFICERS—INJUNCTION—MANDAMUS.
     The courts cannot properly interfere with executive action, either by mandamus or injunction, in a matter in which the executive officer is authorized to exercise his judgment or discretion.

This was a suit in equity by Lee J. Dudley against A. D. James, United States marshal for the district of Kentucky, to enjoin him from removing complainant from his office as a deputy marshal. The cause was heard on motion for a temporary injunction.

E. E. McKay, for complainant.
Walter Evans, for defendant.

BARR, District Judge. The complainant in this case alleges that he was duly appointed and qualified as office deputy United States marshal under James Blackburn, then United States marshal for the district of Kentucky, on the 2d of July, 1896, under and pursuant to the act approved May 28, 1896, at a salary which was fixed by the attorney general at $1,500 per annum; that he took the oath required as said United States deputy marshal, and has performed the duties of an office deputy and clerical assistant to the United States marshal for the district of Kentucky from that time until the filing of this bill; that under an act approved the 16th of January, 1883, commonly styled the "Civil Service Act," and under the rules adopted and promulgated thereunder by the president of the United States November 2, 1896, the position of office deputy marshal and clerical assistant was placed within the bounds and purview of said law and rules, and the classified service, and by reason thereof the complainant cannot be thereafter removed without just cause, and cannot be dismissed from the service because of his political or religious opinions or affiliations. Plaintiff further alleges that on the ——— day of July, 1897, the defendant, A. D. James, qualified, and became the United States marshal for the district of Kentucky, and since then has declared his intention to remove the complainant from his office, and appoint, or cause to be appointed, another in his stead. By an amended bill he alleges that his duties are mostly clerical, and consist of office work in verifying vouchers and pay rolls, and in keeping the office, and preparing the accounts for the amounts paid out and received by the marshal as a disbursing officer, and in keeping the cash and other books of said office, making weekly reports, etc. He further alleges that on July 6, 1897, the defendant, in a communication to complainant, stated "your orator had been highly recommended to him as a book and account keeper, and as a man,

but that his (defendant's) party friends were insisting upon the imme-
diate appointment of a Mr. Blackburn to take your orator's position,
and that he would have to and intended to appoint said Blackburn
in your orator's place, but for no other reason than that the com-
plainant was a Democrat." The prayer of the bill is for a temporary
injunction enjoining the defendant from removing your orator from
his office aforesaid, or from taking any steps towards accomplishing
same, or from doing any act whereby complainant would be disturbed
in discharging his duties or receiving the emoluments of said office,
and upon final hearing he prays that said injunction be perpetuated.

The answer filed denies that the complainant is entitled to hold the
position of office deputy marshal of the United States for the district
of Kentucky at the salary of $1,500, or any other sum, and denies
that the complainant is within the bounds or the purview of the civil
service act, and the rules, and classified service, and that plaintiff
cannot be removed without just cause, or cannot be dismissed from
the service; and denies that he desires to remove the complainant
solely because he is a Democrat; and denies that on the 6th of July,
or at any other time, in a conversation with the complainant, he
stated he intended to employ one Blackburn in place of complainant
for no other reason than that the complainant was a Democrat. And
defendant alleges that the complainant was appointed a deputy
marshal of the Hon. James Blackburn, late marshal for the district of
Kentucky; that he took the oath as said deputy marshal on the 4th of
January, 1894; and that after the passage of the act approved May
28, 1896, he was appointed office deputy, and took the oath as such on
the ———— day of ————, 1896. And further alleges that on the
———— day of June, 1897, he, the defendant, was appointed United
States marshal for the district of Kentucky, and thereafter he executed
bond, and took the oath of office, and is now the legally appointed and
qualified marshal for the district of Kentucky, and that the term of
office of said Dudley expired with the term of office of said James
Blackburn, late marshal of the district, and thereafter he ceased to be
a deputy marshal. Defendant admits that he intends to appoint some
other person than the complainant to the office and position of deputy
marshal of the district of Kentucky, and insists that he has full right
and power to do so. There was no testimony presented, and the case
was heard and submitted on the pleadings.

These pleadings present two questions for consideration: First,
whether or not the complainant was, at the filing of his bill, an officer
or in the executive civil service of the United States; and, second, if
he was and is an officer in the executive civil service of the United
States under and within the civil service act, and the rules promul-
gated thereunder, whether a bill of injunction would lie in this court
to restrain the defendant from removing him. We think it quite
clear that prior to the act of May 28, 1896, the tenure of the deputy
marshal continued only so long as the term of the principal marshal
whose deputy he was, except where it by law specially continued.
The marshal was authorized to appoint one or more deputies, and
their compensation was a matter of contract (within certain limits)
between the marshal and the deputy. There were no duties pre-

scribed by law for the deputy marshal to perform other than those of the marshal, and the authority and power of the deputy was limited by that of the marshal. It is true that the deputy was paid out of the fees which he earned, but these fees were fees due to the marshal, collectible by him alone; and every service and duty performed was in the name of the marshal. The obligation of the bond of the marshal covered the acts of the deputy as well as those of himself. This was the recognized position of the deputy marshal from the establishment of the government, and congress, as early as 1789, provided: "In case of the death of any marshal his deputy or deputies shall continue in office, unless otherwise specially removed, and shall execute the same in the name of the deceased until another marshal is appointed as provided by law. The defaults and misfeasances in office of such deputies in the meantime shall be adjudged a breach of the condition of the bond given by the marshal who appointed them." And also provided that every marshal or his deputy, when removed from office, or when the term for which the marshal is appointed expires, "shall have power notwithstanding to execute all such precepts as may be in their hands respectively at the time of such removal or expiration of office." Rev. St. §§ 789, 790.

It is held in Powell v. U. S., 60 Fed. 687, that a deputy marshal is not such an officer of the United States as can maintain a suit against the United States for service rendered, and for services rendered he must look to the marshal who appointed him, or under whom he acts. And in Douglas v. Wallace, it is held by the supreme court of the United States: "The claims of deputy marshals against the marshal for services stand upon the same footing as those of an ordinary employé against his employer." 161 U. S. 346, 16 Sup. Ct. 485. This being the position which deputy marshals bore prior to the act of May 28, 1896, the inquiry arises whether that act has changed their relations, so as to make either an office deputy or a field deputy an independent officer of the United States, with a tenure continuing after the term of the office of the principal. The tenth section of this act provides:

"That when in the opinion of the attorney general the public interest requires it, he may on the recommendation of the marshal, which recommendation shall state the facts as distinguished from conclusions, showing necessity for the same, allow the marshals to employ necessary office deputies and clerical assistance, upon salaries to be fixed by the attorney general from time to time and paid as hereinafter provided. When any of such office deputies is engaged in the service or attempted service of any writ, process, subpoena, or other order of the court, or when necessarily absent from the place of his regular employment on official business he shall be allowed his travelling expenses only and his necessary and actual expenses for lodging and subsistence, not to exceed two dollars per day, and the necessary actual expenses in transporting prisoners including necessary guard hire, and he shall make and render accounts thereof as hereinafter provided."

Section 11 provides:

"That at any time when in the opinion of the marshal of any district the public interest will thereby be promoted, he may appoint one or more deputy marshals for such district, who shall be known as field deputies, and who unless sooner removed by the district court as now provided by law shall hold office during the pleasure of the marshal, except as hereinafter provided, and who shall each, as his compensation receive ¾ of the gross fees, including mileage,

as provided by law, earned by him, not to exceed $1,500 for the fiscal year, or at that rate for any part of a fiscal year, and shall in addition be allowed his actual and necessary expenses, not exceeding $2 per day while endeavoring to arrest under process a person charged with or convicted of a crime. * * * The marshal immediately after making any appointment or appointments under this section shall report the same to the attorney general, stating the facts as distinguished from conclusions constituting the reason for such appointment, and the attorney general may at any time cancel any such appointment as the public interest may require."

And by section 24 "all acts and portions of acts inconsistent with this act are hereby repealed."

It will be observed that the United States, both in office and field deputies, pay their compensation. As to office deputies, the compensation is by salary; as to field deputies, by three-fourths of the gross fees which they may have earned. These fees are not in the name of the deputy, but go to the marshal, who, we assume, collects them, and pays them into the treasury; and the field deputies are paid out of the treasury three-fourths of their gross fees. But, whether this be the actual method of payment or not, it is not material in the present inquiry. It will also be observed that office deputies have exactly the same power and authority to serve process and perform other duties as the field deputies have, and the power of the office deputy as well as that of the field deputy is limited in this regard by the power and authority of the marshal. Each class of deputies performs such duties as may be prescribed by the marshal, and, though it may be contemplated that the office deputy will render the marshal clerical assistance, this must depend upon the marshal's convenience or will. It is true that section 11 in terms provides that the field marshal shall hold his office during the pleasure of the marshal, and nothing is stated in regard to the office deputy; but this should not, and cannot, of itself, be construed to make an office deputy a separate and distinct officer of the United States with an indefinite term. If there is any distinction to be drawn from the language of the two sections as to the tenure or term, it will be rather against the office deputy, since the language is to allow the marshals "to employ" necessary office deputies, and section 11 authorizes the "appointment" of one or more deputy marshals. We see nothing in the provisions of this act which is inconsistent with the previous recognized position of the deputy marshal in regard to his tenure or service, and conclude that the former statutes, read with this act, cannot be construed other than that the term of both office and field deputy marshals must cease with that of the marshal who appointed them. We conclude, therefore, that the complainant was, at the time of the filing of his bill, not in the executive civil service of the United States, within the meaning of the civil service rules promulgated November 2, 1896, and therefore he is not entitled to maintain this action.

This is the construction given to the act of May 28, 1896, by the first comptroller of the treasury, the Honorable Robert B. Bowler, in a decision of June 7, 1897. Although this view is conclusive of the present motion, it is proper, as there seems to be some misapprehension of the power of a court of chancery to grant injunctions, and thus control executive action, that the court should briefly state its

views upon that question. It has been settled from the adoption of the constitution of the United States, dividing the powers of government into three departments, that the judiciary cannot properly interfere with executive action when the executive officer is authorized to exercise his judgment or discretion; that it is only in cases where the executive officer has to perform a purely ministerial act that the courts, either by a proceeding in mandamus or injunction, can direct or control the performance of such (ministerial) act. Whether or not the judiciary can control executive action, and to what extent, is most elaborately discussed in the case of Marbury v. Madison (1803) 1 Cranch, 137, and there the rule was indicated that the courts cannot, either by mandamus or otherwise, control executive action, where that action depended upon either the discretion or judgment of the executive officer; and it was only where the performance of the executive act was purely ministerial that the court could intervene, either by mandamus or otherwise. This question has been again and again presented and considered by the court, and the rule first adopted never departed from. In Gaines v. Thompson, 7 Wall. 347, the supreme court, by Justice Miller, after deciding that the courts would not interfere by injunction any more than by mandamus to control the action of the secretary of the interior and the commissioner of the land office, and require them to cancel an entry for land, because their action was not ministerial, but a matter resting solely upon the judgment or discretion of those executive officers, quoting from the opinion of Chief Justice Taney in Commissioner of Patents v. Whiteley, 4 Wall. 522, said:

"The court cannot entertain an appeal from the decision of one of the secretaries, nor revise his judgment in any case where the law authorizes him to exercise judgment or discretion, nor can it, by mandamus, act directly upon an officer, or guide or control his judgment or discretion in a matter committed to his care in the ordinary exercise of his official duties. The interference of the court with the performance of the ordinary duties of the executive department would be productive of nothing but mischief. We are quite satisfied that no such power was ever intended to be given to them."

The court in this case reviewed the previous cases, and showed that the distinction which had been previously laid down had never been departed from, and said, among other things:

"Certain powers and duties are confided to these executive officers, and to them alone; and, however the courts may, in ascertaining the rights of parties in suits properly before them, pass upon the legality of their acts after the matter has once passed beyond their control, there exists no power in the courts by any of its process to act upon the officer so as to interfere with the exercise of his judgment while the matter is properly before him for action. The reason for this is that the law imposes this discretion in him for that action, and not in the courts. The doctrine, therefore, is as applicable to writs of injunction as to writs of mandamus."

See, also, Kendall v. U. S., 12 Pet. 524; Decatur v. Paulding, 14 Pet. 497; U. S. v. Black, 128 U. S. 40, 9 Sup. Ct. 12; U. S. v. Windom, 137 U. S. 636, 11 Sup. Ct. 197; High, Extr. Rem. § 42; Black, Const. Law, p. 81.

The question before the court does not require the consideration of the civil service law of 1883, or of the rules and regulations made thereunder in November, 1896. No opinion is now indicated as to

whether or not that law, and the regulations made thereunder, apply in the appointment of office deputy marshals. That matter is not before the court. For the reasons given, the motion for the temporary injunction must be overruled.