PRIDDIE v. THOMPSON, United States Marshal.

(Circuit Court, D. West Virginia. July 28, 1897.)

1. UNITED STATES MARSHAL — REMOVAL OF OFFICE DEPUTY — CIVIL SERVICE LAW.

An office deputy marshal appointed by the joint action of the attorney general and the marshal under the provisions of the act of May 28, 1896 (29 Stat. 182, § 10), is protected in his position by the civil service laws and rules, and is not subject to removal by the marshal.

2. INJUNCTION—REMOVAL FROM OFFICE—CIVIL SERVICE LAW.

One who holds a position under the protection of the civil service laws and rules is entitled to the remedy by injunction to prevent his unauthorized removal therefrom.

J. T. McGraw, J. H. Holt, and Z. T. Vinson, for complainant.
Joseph H. Gaines, for defendant.

JACKSON, District Judge. This cause is now heard upon a motion for an injunction upon a bill filed by the complainant, an office deputy marshal of the United States for the district of West Virginia, against the defendant, the marshal of the United States for the district of West Virginia. The defendant files a demurrer to the bill, and insists—First, upon the right of the marshal to remove the complainant in this cause from the position he holds; second, that there exists no legal remedy to prevent the marshal from removing the complainant from office, and appointing another in his place. Congress passed an act "to regulate and improve the civil service of the United States," which was approved by the president on the 16th day of January, 1883. 22 Stat. 403. I infer that the purpose of congress was to promote efficiency in the public service, and the exercise of such a power was clearly within its legislative scope. Under and by virtue of the provisions of this act the commission was authorized "to make regulations for their guidance" in the execution of the powers conferred upon it, subject to the rules that may "be made by the president." Upon the 28th day of May, 1896, congress passed an act "allowing the marshals of the United States to employ necessary office deputies and clerical assistants, if in the opinion of the attorney general the public interest requires it." 29 Stat. 182, § 10. The bill alleges that the complainant was appointed, under written authority from the attorney general, by C. E. Wells, then marshal of this district, "chief office deputy marshal," with the approval of the attorney general, and that he qualified as such officer on the 1st day of July, 1896. The form of the appointment was prepared and sent to the marshal from the department of justice, as provided for in the act of May 28, 1896, designating and authorizing the complainant to act as chief office deputy of the United States marshal, and to hold said position subject to the conditions prescribed by the tenth section of said act. Prior to the act of 1896, deputy marshals were all on the same footing, and held their positions at the pleasure of the marshal, unless removed by the district court. By the tenth section of the act of 1896 there was a provision made for a new grade of deputy marshals, to be known as "office deputies," "when,

in the opinion of the attorney general, the public service requires it"; salaries to be fixed by the attorney general, and to be paid out of the treasury of the United States.    Section 11 of the same act provides for the appointment of deputy marshals "who shall be known as field deputies, and, unless sooner removed by the district court, shall hold office during the pleasure of the marshal, and shall receive as compensation for their services three-fourths of their gross fees, including mileage, as provided by law."    By the terms of section 10 of the act, no limitation is imposed upon the tenure of the position of the office deputy, nor is there any provision found in the act that places the position at the pleasure of the marshal.    He is paid directly from the treasury; but in the case of the field deputy the tenure of the office is at the pleasure of the marshal, and, as before stated, he is paid out of the gross fees of his office.    It is claimed by the complainant in this action that he is protected in his position by the express terms of the civil service law, and the regulations made to execute its provisions; that he has been assigned by the order of the attorney general to the position of chief office deputy at a salary of $1,800 per annum.    It is apparent that there is a striking difference between the two sections referred to, and that congress did not intend that office deputies should be removed except for good cause, "other than for political or religious opinions or affiliations," but intended to keep the office in the hands of trained men, leaving the field deputies alone subject to removal.    It would seem that congress intended that office deputies should not be removed from their positions by a marshal who happens to entertain different political opinions, so long as such deputy was an efficient and faithful officer.    There is no provision in the act to remove an office deputy once installed in his position, not even for cause.

The second section, par. 1, of the civil service act  provides that the civil service commission shall "aid the president as he may request in preparing suitable rules for carrying the act into effect," and makes it the duty of "all officers of the United States in the various departments and offices to which any such rules may relate to aid in carrying such rules into effect."    Under the provisions of this act the president promulgated, on the 6th day of May, 1896, certain rules prepared by him in connection with the civil service commission.    The additions under the revision of the rules as promulgated May 6, 1896, brought into the classified service "office deputy marshals."    13 Civ. Serv. Rep. pp. 101, 102.    The records of the civil service commission show that this complainant was, by the joint action of the commission and the attorney general, recognized as belonging to the classified service, and he is so reported in the register of the department of justice for 1897.    The marshal of this district, by letter bearing date June 15, 1896, addressed to the attorney general, recommended to him the complainant as his chief office deputy, which the attorney general approved in a letter bearing date June 29, 1896, the appointment to take effect on the 1st day of July, 1896, and which position he has held, unmolested, up to the time of the filing of this bill.    It does not appear that he ever passed the civil service examination, but, being in office at the time he was

placed in the classified service, as provided for by section 7, rule 2, he was exempt from such examination.

I have referred to such portions of the act of congress creating the civil service commission, and the rules promulgated under it, as I think apply to the case under consideration. It is to be presumed that congress intended, when it passed the act, that it should be observed in good faith by all the officers of the government who came within its provisions. It will be observed that the civil service commission, as well as the attorney general, in construing section 10 of the act of 1896, must have reached the conclusion that the office deputies come within the provisions of the act, and by their joint action they have placed them in the classified service. So far as the attorney general took action in regard to the classification of these deputies, he must have concluded that by the terms of section 10 the appointment was vested in him upon the recommendation of the marshal. The marshal could not appoint without his approval, and it was a condition precedent that the marshal should recommend a person for the position before the attorney general could approve it. Certainly congress never intended that the marshal should recommend a person to himself for appointment. To my mind, there can be no question that the real source of power in making this appointment was with the attorney general, upon the recommendation of the marshal. If this conclusion is wrong, why should the marshal be vested with the power of recommendation? If the marshal is the appointing power, there would be no occasion for him to recommend a person for appointment. It is absurd to suppose that the law intended that the appointing power should be invested with the power of recommendation to itself. When we look to the provision which fixes the salary of the office deputies, we find that their salaries are fixed by the attorney general, and paid monthly out of the treasury of the United States, and not out of the fees earned by them as provided for field deputies in section 11. I have concluded, therefore, that the office deputy or clerical assistant is an appointee of the attorney general, upon the recommendation of the marshal, for the reason that no person recommended by the marshal could be appointed unless approved by the attorney general. It would seem that when an appointment is made by the joint action of the attorney general and the marshal, and a party appointed has been placed in the classified service, that he would hold the position during good behavior. Not so with what is known as a "field deputy," who holds his position at the pleasure of the marshal, unless removed by order of the district court. He is appointed by the marshal upon his own responsibility, and paid by fees as he earns them. It is apparent that there are two classes of deputies. One is the office deputy, the other is the field deputy. Section 10 authorizes the attorney general, when the public interest requires it, to allow the marshal to employ the necessary office deputies. This section provides for joint action by both the attorney general and the marshal, while section 11 confers upon the marshal the absolute power to appoint whomsoever he desires as his field deputies, without regard to the rules of the civil service.

The next question presented is, can a person in the classified serv-

ice be removed, without cause, for political or religious reasons alone? It is manifest that the act was passed to promote the efficiency of the civil service of the government, and was intended to prevent the removal of all officers, for political reasons, who were within the classified service. If such was not the object of the act, its purpose is not apparent. The act requires rules to be "formulated and promulgated" for the guidance of the commission, which the president, in connection with the members of the commission, prepare and announce, and, when so prepared and announced, become a part of the law itself. Rule 2 of section 3 forbids the dismissal from the executive civil service of any one for political or religious opinions or affiliations. 13 Civ. Serv. Rep. p. 53. It is obvious that congress has undertaken, by the civil service act, to restrain the exercise of the power to remove by the appointing power. It evidently hoped to improve the service by limiting the power of removal. leaving an incumbent to retain the position held until removed for cause other than political or religious belief. If this was not the intention of congress, then this civil service act is mere "brutum fulmen," and the attempt of congress to improve the civil service futile and abortive. I conclude that when congress passed the act known as the "Civil Service Act" it had in view the improvement and efficiency of the public service, and that this was its sole purpose.

One other question remains to be considered, and that is whether there is a remedy by injunction to restrain the marshal from removing the plaintiff from the position he holds as chief deputy marshal. It cannot be questioned that the plaintiff has an interest of some kind in the office. If it is a vested interest, he must and should be protected from ouster in some way. It has been wisely said that there is hardly to be found in jurisprudence a wrong without a remedy. The plaintiff, under the civil service rules, claims the right to hold and enjoy the office, and that he is not liable to removal except for cause which does not arise out of "his political or religious opinions or affiliations"; that as long as the statute law creating the office remains as it is on the statute book he is entitled to hold the office during good behavior. If his contention is true that he is protected by the civil service act in the enjoyment of the office, it necessarily follows that there should be some remedy by which he could protect his rights in the enjoyment of it. I know of no remedy at law that would furnish the protection he desires, or would adequately compensate him in the case of an eviction; but it is said that there never was a wrong that the law did not furnish a remedy, though sometimes an inadequate one. Clearly, neither mandamus, prohibition, nor quo warranto could be resorted to in this case, and I doubt if certiorari would be effective. Mandamus is never resorted to as a remedy to prevent an ouster from office. Prohibition is a prerogative writ issued from a superior tribunal to an inferior one to prevent usurpation of power by the latter. Nor could quo warranto be resorted to except against the incumbent who is in possession of the office in question, and who is required by the writ to appear and show by what warrant of authority he exercises the functions of the office. The plaintiff here is in possession, and wants

to be let alone to enjoy what he claims is rightfully his until lawfully removed. As we have seen that mandamus, prohibition, and quo warranto do not lie in the case under consideration, the only remedy left for consideration is the one furnished by injunction. The office in question has, in past times, been regarded as an office which belongs to the victorious political party, and was always held to be a portion of party spoils. I do not now so understand it, nor do I so regard it. If there is anything in the act of congress known as the "Civil Service Act," and the amendments to it, the office is one fully protected by it, and the occupant is withdrawn from the spoils of party. In my judgment, the civil service act is a law founded in wisdom, and if it is executed in the same wisdom in which it was conceived and enacted it will not only prove to be one of the wisest statutes that has been enacted in the latter part of this century, but one of the safeguards of our republican institutions. I reach the conclusion that the incumbent in the position is protected in the enjoyment of it by the civil service act and the amendments thereto. But it is insisted by the defense that there is no remedy to prevent his removal from the office. Since the act known as the "Civil Service Act" became the law of the land, it, like all other statutes, must be referred to the courts for construction when any question arises under it. If, therefore, it was the object and purpose of the act to create a new office or position under its protection, there should be, if there is not, some remedy when it is sought to remove an incumbent under it. The fifteenth section of the act approved January 16, 1883, provides for the punishment of any person who shall be guilty of a violation of any of its provisions, but it does not provide a statutory remedy against the removal of an incumbent from office. Congress may have wisely left this matter to the rights of parties as they existed before the passage of the act. In the case under consideration the question to be determined is not the title to the position or office held by the incumbent. The title is not in dispute, as the incumbent legally holds the office or position, as the case may be. It is, therefore, only a question of removal. Being a question of removal, if there is any remedy to stay the hand that causes the removal, it must be by injunction. It is a preventive proceeding, and always furnishes a remedy to prevent a wrong being inflicted when there is no other adequate remedy. What is the wrong now complained of? Stripped of all the surplusage that generally surrounds questions of this character, the incumbent holds his position by regular appointment, and is unquestionably, if not the "de jure" the "de facto" incumbent of it. The right to hold the position may be inquired into by writ of quo warranto. I am not called upon to determine any question that might arise under that writ. I am asked to determine whether or not the incumbent, an office deputy marshal, who has been classified under the civil service act, shall be entitled to the protection of the act which expressly declares "that no person in the executive civil service shall dismiss or cause to be dismissed any person for political or religious affiliation." As I have heretofore said, no remedy exists, unless the restraining power of the court is interposed. I reach the conclusion that when the title

to the office is not in dispute, but when the question of removal is involved, as in this case, for political reasons, there is a remedy by injunction. In this case it is an effort to oust the party from his position, not only without the sanction of law, but, as I hold, in violation of law. In the case of Ex parte Sawyer, 124 U. S. 223, 8 Sup. Ct. 494, Chief Justice Waite, referring to the remedy by injunction, uses the following language, which seems to support me in the view I have taken of the question under consideration. He says:

"I can easily conceive of circumstances under which a removal, even for a short period, would be productive of irremediable mischief. Such cases may rarely occur, and the propriety of such an application may not often be seen, but, if one arises, and if the exercise of the jurisdiction can ever be proper, the proceedings of the court in due course upon the bill filed for such relief will not be void, even though the grounds upon which it is asked may be insufficient."

The law as laid down by the learned chief justice in the case cited seems to cover the case of this plaintiff, whom it is proposed to remove. High on Injunctions (section 1315) says:

"While courts of equity refuse to interfere by the exercise of their preventive jurisdiction to determine questions relating to title to office, they frequently recognize and protect the position of officers de facto by protecting such position against the interference of adverse claimants."

In this case, as we have seen, the plaintiff is the incumbent, and it is proposed to remove him against his consent. He claims the position by reason of a legal and rightful appointment, and that he is liable to removal only for causes other than political or religious. It would seem that he should be protected, and, if so, it can only be done by the restraining order of the court, in due course, upon a bill filed for relief. In support of the view I have taken in this case I cite High, Inj. (2d Ed.) § 1315; also, Guillotte v. Poincy (La.) 6 South. 507, and the cases there cited. High, speaking for the plaintiff, says for him:

"I am the actual incumbent in possession of the office, to which I claim to be legally entitled. Defendant, claiming under a title the validity of which I dispute, is seeking to oust me extrajudicially, in which effort he will have the aid of my fellow members on the board, and I ask judicial aid to protect my incumbency and possession until defendant shall in due course of judicial proceeding establish his right and title."

Such an action falls within a well-recognized branch of relief by injunction. The doctrine is announced by Mr. High as follows:

"While courts of equity uniformly refuse to interfere by exercise of their preventive jurisdiction to determine questions relating to the title to office, they frequently recognize and protect the possession of officers de facto by refusing to interfere with their possession in behalf of adverse claimants, or, if necessary, by protecting such possession against the interference of such claimants. * * * And the granting of an injunction in such case in no manner determines the question of title involved, but merely goes to the protection of the present incumbents against the interference of claimants out of possession, and whose title is not yet established. This doctrine is in the interest of social peace and order, and conforms to the object and policy of the law in all remedial provisions for the settlement of disputed rights, which always respect and maintain the status quo until the controversy shall be settled in orderly course of judicial procedure. Plaintiff is undoubtedly the de facto officer, because he 'claims the office, and is in possession of it, performing the duties un-

der color of an appointment.'  5 Wait, Act. & Def. p. 7, § 9;  Buckman v. Ruggles, 15 Mass. 180;  Com. v. McCombs, 56 Pa. St. 436;  State v. Howe, 25 Ohio St. 588;  Braidy v. Theritt, 17 Kan. 468."

It follows from what I have announced as the opinion of the court that an injunction will be allowed to restrain the marshal and all others claiming the position now held by the plaintiff from any interference or molestation with him in the possession of the office or position now held by him until the further order of the court.