## FLEMMING v. STAHL.

### (Circuit Court, W. D. Arkansas. December 24, 1897.)

1. DEPUTY MARSHALS—REMOVAL—INJUNCTION.
   A court of equity is without jurisdiction to restrain a removal from office in this class of cases.

2. SAME—POWER TO REMOVE.
   The power of removal is incident to the power of appointment.

3. SAME—CIVIL SERVICE LAW.
   The civil service law never contemplated any interference with the president's power of removal.

4. SAME—REGULATIONS BY PRESIDENT AND COMMISSION.
   Under the civil service law, neither the civil service commission, nor the president, nor both combined, can make any regulations with the force and effect of law, nor will courts of equity enforce them. The president has power to enforce such regulations by the exercise of the power of removal, and, if he does not do so, courts of equity will not interfere.

The plaintiff alleges:

That on the 1st day of July, 1896, he was appointed United States office deputy marshal, by the attorney general of the United States upon the recommendation of George J. Crump, at that time United States marshal for the Western district of Arkansas, and on the 3d day of July, thereafter, duly qualified as such, and has since continuously remained in office and acted as such; that on the —— day of ——, 1897, the office of office deputy United States marshal was, by an order of the president of the United States, acting pursuant to a law of congress approved January 16, 1883, entitled "An act to regulate and improve the civil service of the United States," placed upon the qualified civil service list; that by virtue of said order, and the then existing civil service rules, and pursuant to said statute of the United States, all United States office deputy marshals were exempt from removal for political or religious reasons, and were to hold office during good behavior; that, notwithstanding he has satisfactorily discharged the duties of said office, he is informed and believes the present United States marshal for the Western district of Arkansas, Solomon F. Stahl, who duly qualified as said marshal on the —— day of ——, 1897, and who is of a different political belief from plaintiff, is attempting, for political reasons, and none other, to remove plaintiff from his said office of deputy marshal, and will speedily remove him unless restrained by this court.

He therefore prayed for a restraining order. A temporary restraining order was granted, without notice, with leave to the defendant to appear and move to dissolve at any time upon one day's notice. The defendant has interposed a demurrer to the bill, questioning the jurisdiction of the court, and the sufficiency of the facts stated in the bill to justify a restraining order. He has also filed a motion to dissolve the temporary restraining order for the following reasons:

(1) Because the restraining order was granted without notice, and in violation of equity rule 55; (2) because it does not appear that the amount involved is sufficient to give the court jurisdiction of the subject-matter; (3) because the bill is insufficient on its face to justify a restraining order; (4) because there is no equity in the bill.

William A. Falconer, for plaintiff.

Hill & Brizzolara and Frank A. Youmans, Asst. U. S. Atty., for defendant.

ROGERS, District Judge. As to what is the proper practice with reference to granting temporary restraining orders without notice the court is not inclined to consider in this case, nor is it inclined to consider the question as to whether or not it is necessary, in a case of this character, to give the court jurisdiction, that the bill should allege that the amount involved exceeded the sum of $2,000, for the reason that, without reference to what the proper practice is, if the bill stated facts sufficient upon its face to justify a temporary restraining order, the court would grant or continue it now; and, secondly, if it is necessary that the bill should show affirmatively that the amount in controversy involves more than $2,000, exclusive of interest and costs, upon sustaining the demurrer on that ground the bill might be amended in that respect. The court prefers to decide the case upon its merits, and this involves two questions: (1) Whether the court has jurisdiction to grant a restraining order; (2) if it has jurisdiction, then whether or not the term of office of an office deputy marshal expires with the term of his principal,—or, to state the same proposition in another form, whether the present marshal has the right, under the law, to remove the plaintiff, notwithstanding the civil service rules referred to in the bill.

I do not find it necessary to decide in this case whether or not it is true that a circuit court of the United States is without jurisdiction, under all circumstances, to restrain a removal from office; but upon the authority of In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, I am of the opinion that the court has no jurisdiction to restrain a removal in this case. That decision is followed in the following recent cases,—similar cases to the one at bar: Woods v. Gary, decided by Judge Cox in the supreme court of the District of Columbia, and reported in No. 37 of the Washington Law Reporter, dated September 16, 1897; Dudley v. James, 83 Fed. 345, opinion by District Judge Barr, of Louisville, Ky.; Carr v. Gordon, 82 Fed. 373, opinion by Jenkins, circuit judge; Cooper v. Smyth, 84 Fed. ——, decided by Pardee, circuit judge, and Newman, district judge, N. D. Ga.; Taylor v. Kercheval, 82 Fed. 497, opinion delivered by Baker, district judge.

It is not necessary that I should say more in this case, but, as the question has been presented, it is perhaps well enough for me to express the result of my investigations upon the second question also, namely, whether or not the term of office of a deputy marshal expires with the term of his principal; or, in other words, whether the present marshal has the right, under the law, to remove the plaintiff, notwithstanding the civil service regulations referred to in the bill. Both these questions the court answers in the affirmative, upon the authority of the following cases: Woods v. Gary, supra; Dudley v. James, supra; Carr v. Gordon, supra; Taylor v. Kercheval, supra; 3 Dec. Comp. Treas. 648. Opposed to these decisions are the decisions of District Judge Jackson, found in Priddie v. Thompson, 82 Fed. 187, and in an opinion delivered by the same judge on November 13,

1897, in the cases of Butler v. White, Berry v. Same, and Ruckman v. Same, 83 Fed. 578. I have carefully examined the opinions by Judge Jackson, and am unable to concur in the conclusion reached by him. I think the construction which he places upon section 10 of the act of May 28, 1896 (29 Stat. 182) is erroneous. The purpose of that section of the act, I think, is manifest. It was never intended thereby that the appointment of an office deputy marshal should be made by the attorney general. On the contrary, it was contemplated that the appointment should be made by the marshal. Congress intended that the attorney general should determine whether or not the public interest required the appointment of an office deputy, and to determine that fact that section provided that the marshal should state the facts, as distinguished from conclusions, showing necessity for an office deputy, in which event it was provided the attorney general should "allow the marshal to employ necessary office deputies and clerical assistance, upon salaries to be fixed by the attorney general, from time to time, and paid as hereinafter provided." Such office deputy or employé was, nevertheless, a deputy of the marshal, and not the appointee of the attorney general. The object of the legislation was in the interest of economy in the administration of the marshal's office, and to keep the matter of the necessity for the employment of an office deputy and the salary attached thereto under the control of the attorney general. It nowhere appears in that section, or in any other part of the act, that this office deputy has the authority or power to do any official service whatever in his own name. On the contrary, a fair construction of the statute, and the practice which has universally obtained under it, is for him to do every official act in the name of his principal. I do not think there is anything in the act which justifies the conclusion that the office deputy, so far as the power of his principal to remove him is concerned, stands upon any other footing than that of a field deputy. I think it is clearly within the power of the marshal, whenever there is no necessity for the office deputy, to discharge him, and the attorney general, whenever satisfied there was no necessity for him, could also direct his dismissal; and upon the refusal of the marshal to do so the attorney general could enforce his direction by reporting the matter to the president, who could himself enforce obedience to the order, if necessary, by the removal of the marshal himself. The provision was a wise and a prudent one. It gave the attorney general supervisory control over the office expenses of the marshals, and, at the same time, has secured to them such help as they require, and at such compensation as, in the opinion of the attorney general, the services of office deputies are reasonably worth. It was, in my opinion, however, never intended that the relation of such office deputy to the marshal should be disturbed by that legislation. Whatever the deputy did, he did in the name of his principal, and I think his term of office expired with that of his principal, except for the purposes named in sections 789 and 790 of the Revised Statutes of the United States. In other words, I am of opinion that, so far as the office of office deputy marshal is concerned, the power of removal is an incident to the power of appointment.

The only remaining question is as to whether or not the civil service regulations made by the civil service commission and the president, and promulgated by the latter, can have the effect, in any wise, to modify, alter, or change the statute. On that point I content myself with the discussion of Mr. Justice Cox in Woods v. Gary, supra, and concur in the conclusion reached by him, that no such power exists either in the civil service commission or in the president, or in both combined. I concur with him, also, in the conclusion that the civil service law never contemplated that the president, or the commission, or both, could make any rule or regulation which could have the force and effect of law. True, the president may make rules and regulations administrative in their nature, which would govern the policy of his administration, and he could enforce the same by the removal of any person from office who refused to abide thereby, but they could not have the force and effect of law, nor would the courts enforce them. Such rules and regulations are purely administrative, and may be altered, amended, or repealed by the president at any time, or by his successor in office.

An examination of the debates of congress, which will be found reported in the Congressional Record, vol. 14, pt. 1, 47th Cong., 2d Sess., discloses unmistakably the fact that congress never intended that the civil service law should, in any wise, affect the power of removal vested, under the constitution, in the president. The bill seems to have been framed upon the idea of taking away the temptation to remove persons from office by requiring appointments to be made, to fill vacancies, under civil service examinations. The debates will show that the bill was framed to carefully avoid that mooted constitutional question of the power of congress to establish a tenure of office with which the president could not interfere. To those who may be now interested in the subject, I cite from the volume of the Congressional Record above referred to (pages 207–210, 274). On the last-named page Senator Hoar said as follows:

"The measure commends itself to me, also, because it carefully and wisely avoids all the disputed constitutional questions which have been raised in the discussion of this subject. It nowhere trenches upon the constitutional power of the president, under any definition or limitation found in our constitutional discussion. The president's right to make rules, to apply rules, to change rules, the president's responsibility growing out of his constitutional duty to see that the laws are faithfully executed, are not impaired, and, in my judgment, cannot be impaired, by legislation. I do not understand that it has been the purpose of the honorable senator from Ohio, in reporting this bill, in any degree to infringe upon the constitutional prerogative of the executive. It does not assert any disputed legislative control over the tenure of office. The great debate as to the president's power of removal, the legislative power to establish a tenure of office with which the president could not interfere, which began in the first congress, which continued during the contest of the senate with Andrew Jackson, revived again at the time of the impeachment of Johnson, and again in the more recent discussion over the tenure of office bill in the beginning of the administration of President Grant, does not in the least become important under the skillful and admirable provisions of this bill. It does not even (and that is a criticism made upon it, but in my judgment it is one of its conspicuous merits) deal directly with the question of removals, but it takes away every possible temptation to improper removals. What executive, what head of a department, what influential public man anywhere, can seek in the least to force a worthy and deserving public

officer from his office merely that there may be a competitive examination to fill his place,—to fill a place at the bottom of the list, not to fill his place, as is well suggested."

On page 207 of the same volume, Senator Pendleton, who was the author of the bill, said: .

"The bill does not touch the question of tenure of office or of removal from office. I see it stated, by those who did not know, that it provides for a seven-years tenure of office. There is nothing like it in the bill. I see it stated that it provides against removal from office. There is nothing like it in the bill."

On page 210 Senator Sherman insisted that the fact that no provision was contained in the bill prohibiting removal from office was a grave fault in the bill. It seems to have been conceded, therefore, on all sides, that the bill made no provision whatever for interfering with the right of the president to make removals.

The conclusion I have reached is that the court was without jurisdiction to grant the original restraining order, that the same was improvidently made, and must be set aside. The power to amend not existing, the bill should be dismissed, at the cost of the plaintiff.