Whaley, Judge,
delivered the opinion of the court:
This is a suit of a former chief civil engineer of the National Park Service at large, Interior Department, for restoration to his former position from which he was removed July 5, 1925, and for the salary of the office from that date at the rate of $5,200 per annum until restored to the service, on the ground he was illegally discharged, contrary to the provisions of section 6 of the act of August 24, 1912, 37 Stat. 555.
A summary of the material facts shows that the plaintiff on May 28, 1900, after an examination by the Civil Service Commission, was appointed inspector in the Engineering Department at large in the United States, and through various promotions and transfers was appointed by the Secretary of the Interior on April 10, 1917, as a civil engineer in the national parks. On March 1, 1921, his title was changed to “ chief civil engineer of the National Park Service at large”, and on July 1, 1924, he was promoted to $5,200.00 a year with travel allowances.
While the Director of the National Park Service was on an inspection trip of the national parks he wired the plaintiff on July 5, 1925, that he was sorry he had missed him at Glacier and that he had arranged to have the survey up Ipsut Creek handled by the Bureau of Public Koads and that he had so advised the officers of public roads. It appears that the plaintiff was in charge of this survey, and upon receiving this telegram of the change of the work from under his control to that of the Bureau of Public Boads he imme *229 diately telegraphed the Director of National Parks that he considered the change an unwarranted reflection npon his professional work and damaging to his professional reputation, and that unless the work, for which he had perfected an organization, was immediately returned to him, all the facts would be presented to the Secretary of the Interior, and also to the public, if necessary. In this telegram he also requested an immediate decision on the part of the director as to whether he was to complete the work or “ whether I am to return to Portland and be relieved at your earliest convenience of further duty.” Upon the receipt of this telegram by the director from the plaintiff on July 7, 1925, the director wired the plaintiff that his connection with the bureau was terminated from that date for the good of the service, and confirmed the telegram by letter of July 8,1925, notifying plaintiff in this letter that he had appointed an acting chief civil engineer in full charge of the office.
The plaintiff turned over and delivered the office to the acting chief civil engineer who had been named in the letter from the director to the plaintiff. On July 12, 1925, the plaintiff received a wire from the director in which he stated that by direction of the Secretary of the Interior his resignation, as stated in his telegram of July 6, had been accepted, effective at the close of business on July 7. In reply to this telegram the plaintiff wired the Secretary of the Interior that the telegram sent by him on the sixth was not a submission of his resignation but a request to be relieved .from duty so that he could ethically present his objections to the actions of the director in taking the survey away from him. Following the receipt of this telegram the Secretary of the Interior wrote the plaintiff on July 20, 1925, acknowledging receipt of his wire in which he stated that his telegram of the sixth to the director was not submitted as a resignation, but that at the time of its receipt it was so considered and acted upon. However, whether it was a resignation or not, the dismissal of the plaintiff by Director Mather on July 7 was confirmed and approved for the good of the service because of insubordination as set forth in his telegram of the 6th. Upon the receipt of this letter on August 5 the plaintiff *230 wrote the Secretary protesting against his removal and requesting that he be given an opportunity to present the facts leading up to his telegram of July 6, which should not be considered as insubordination, but as a protest against an unwarranted reflection upon his professional ability. To this letter the Secretary, on August 14,1925, replied, stating that the plaintiff’s removal was by the direction of the Secretary, and that he had only afforded him an opportunity to present his resignation, and upon his failure to do so his removal had been confirmed. He further stated that he did not deem it necessary to hold any hearing, but that any statement made in writing by the plaintiff would be carefully considered.
On October 12, 1925,' the plaintiff submitted to the Secretary of the Interior two vouchers covering salary as chief civil engineer of the National Park Service for the period from July 8 to July 31,1925, and from August 1 to Sept. 30, 1925. These vouchers were not honored for the reason that plaintiff had been separated from the Service by the Secretary of the Interior on July I, 1925. The plaintiff appealed his removal from the Service to the Civil Service Commission, requesting a review of his case. The Commission declined to review the case on the ground that the civil-service rules did not apply in cases of removal for cause. Upon the refusal to, hear the case by the Civil Service Commission the plaintiff asked for a rehearing, but the Commission again refused to review the case. Subsequently the plaintiff addressed a letter to the Commissioner of Pensions on March 8, 1927, requesting payment of his deferred annuity under the Retirement Act of July 3, 1926, 44 Stat. 904, 909, but the Commissioner of Pensions declined the application on the ground that plaintiff’s involuntary separation from the Service was due to dismissal for cause. From this ruling the plaintiff appealed to the Department of the Interior, and by decision of July 13, 1927, the ruling of the Bureau of Pensions was confirmed. On Sept. 12, 1928, the plaintiff again requested of the Secretary of the Interior an investigation into his removal, and asked that he be reinstated to, his office and reimbursed for his lost salary. This request was denied *231 on Sept. 24,1928. Again, on May 31,1929, the plaintiff wrote to the Secretary of the Interior asking for an investigation into his removal, and on Sept. 13,1929, the Secretary refused to restore him to the Service. On January 13, 1930, the plaintiff filed suit in this court in which he seeks to be restored to his former position and to be reimbursed for the salary which he would have received if he had not been removed, on the ground that he was illegally removed from office, in that the provisions of section 6 of the act of August 24, 1912, 37 Stat. 555, were not complied with, because he was not furnished with a written copy of-the charges and was not given an opportunity to reply to the same, or granted a hearing, and that the Director of the National Park Service had no right to discharge him.
The facts plainly show that the plaintiff was removed from office by the Director for insubordination and that the action of the Director of National Parks was confirmed by the Secretary of the Interior, who had appointed the plaintiff to office. It is true the Secretary of the Interior afforded the plaintiff an opportunity to resign, and doubtless in so doing wished to relieve the plaintiff of being dismissed from the Service and having this mark on his record. Upon the plaintiff’s refusal to resign he was dismissed. As we view this case, it is unnecessary to decide whether there was a strict compliance with the act of August 24, 1912, or not. The plaintiff bases his claim upon the ground that he was removed from the office; that he was removed in violation of the rules of the civil service; that the Secretary of Interior in removing him from office did not comply with the civil-service law; and that if he were illegally removed from his office he is entitled to receive the salary therefor, whether he rendered any service or not during this period. The plaintiff was removed from office and has not occupied it from the date of his removal. The duties and the salary have been performed and drawn by another.
Section 6 of the act of August 24, 1912, reads as follows:
“ That no person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service and for reasons given in writing, and the person whose removal is sought *232 shall have notice of the same and of any charges preferred against him, and be furnished with a copy thereof, and also be allowed a reasonable time for personally answering the same in writing, and affidavits in support thereof; but no examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer making the removal; and copies of charges, notice of hearing, answer, reasons for removal, and of the order of removal shall be made a part of the records of the proper department or office, as shall also the reasons for reduction in rank or compensation ; and copies of the same shall be furnished to the person affected upon request, and the Civil Service Commission also shall, upon request, be furnished copies of the same.”
In construing section 6 this court in the O’Neil case, 56 C.Cls. 89, 95, said:
“ The rule above quoted does not in any way deprive the Secretary of the Treasury of his right to remove from office an officer whom he has appointed. The plaintiff was appointed to the office which he held by the Secretary of the Treasury, whom Congress had clothed with the power to make such appointment. Having the power to appoint, he had also, as incident to it, the power to remove. The rule above quoted requires the appointing power when he exercises his right of removal to follow a certain course of action. A duty is imposed upon the officer, but if he ignores it and removes a person from office, his action is not thereby illegal, nor is the removal rendered void and of no effect, nor can the person so removed claim that he has not been removed, and that he is entitled to continue in the office, to perform the services of the office, and to receive the compensation attached to it. As a matter of fact, he is removed; he ceases to be in the service of the United States, and his only remedy is to proceed without delay in a court of competent jurisdiction to try his right to the office,. This the plaintiff did not do and never has done.
“What was it the Secretary was required to do by the rule ? To state the cause of removal in writing and file it. The failure to comply with this requirement could have no bearing upon the legality of the removal. It was simply a rule which had for its purpose the regulation of the conduct of the head of the department. If he failed to comply with it, his conduct could be called in question, and the President could, if he chose, reprimand him, or take any steps which he might deem best to correct him.
*233 “ Even if the removal in this case was illegal, which is not the case, the illegal order of a subordinate officer will not make the Government responsible for the salary of the plaintiff for a long term of years, during which period no service has been rendered. In this case the office from which the plaintiff was dismissed was abolished by law on July 1, 1913, and he is suing in part for the compensation of an office which had no legal existence for more than seven years.”
It is unnecessary for ús to pass on the question of whether the removal was legal or illegal. The sole question for our consideration is, Has the plaintiff a cause of action cognizable within the jurisdiction of this court? The first thing to be considered is, Who has the title to the office? If the plaintiff does not have the title to the office, then he is not entitled to the salary.
When the plaintiff was removed another officer was appointed in his place and the office has been filled by another ever since. From the time of the plaintiff’s removal and ever since, the salary of the office has been paid to the incumbent of the office. In order for the plaintiff to be entitled to recover the salary of the office it is necessary first to establish his right to the title to the office. This court has no jurisdiction of an action which has for its purpose the reinstatement of the plaintiff to the office from which he has been removed. Nicholas v. United States, 55 C.Cls. 188, 192.
In Arant v. United States, 55 C.Cls. 327, 338, Chief Justice Campbell, after a review of the authorities, said: “When, however, an attempted removal has been made and the officer sues for the salary, he necessarily puts in issue his right to the office. It was held by this court in Romero's case, 24 C.Cls. 331, in an opinion by Chief Justice Richardson, that one claiming a salary must prove his legal title to the office, and that only an officer de jure can maintain an action for salary. This ruling has been followed in other cases — Morey case, 35 C.Cls. 603; Jackson case, 42 C.Cls. 39. But the title to an office which is claimed by two persons cannot be determined in a suit by one of them for salary. The jurisdiction to determine the title is exercised either by certiorari, mandamus, quo warranto, or its statutory substitute, or by *234 some other extraordinary remedy. In re Sawyer, 124 U.S. 200, 212. The person in possession of the office and exercising its duties is entitled to a hearing on the question of his right to the compensation provided, and to the office as well, and such a hearing cannot be accorded in an action for salary alone, or in the Court of Claims at all. When a wrongful removal is made or attempted, and no one is appointed to the supposed vacancy, the officer who can show the unlawfulness of his removal and that he is entitled to the office has been allowed to sue for and recover the salary.” (Italics ours.) «
The plaintiff was not suspended from office but he was dismissed, removed, and another officer appointed in Ms place. The plaintiff has never brought an action in any court of competent jurisdiction to determine his right to the office. He was discharged July 5, 1925, and the petition in this court was filed January 18, 1930, over four years after his removal. During all this time another officer has occupied the position and drawn the salary. It is true the plaintiff requested hearings of more than one Secretary of the Interior and applied to both the Civil Service Commission and the Pension Office for relief, but this court cannot consider whether the steps taken by him were advisable, necessary, or proper to overcome the charge of laches. The material fact before us is that he was removed from office by the Secretary of Interior, whether lawfully or unlawfully, and has not asserted Ms rights by an appropriate action in a court of competent jurisdiction to establish his right to office. Until Ms right to the office has been so established, this court has no jurisdiction for an alleged claim for back salary. The failure to bring such a proceedings within a reasonable time would bar recovery.
In Ararnl v. Lane, 249 U.S. 367, 372, it was held:
“ When a public official is unlawfully removed from office, whether from disregard of the law by Ms superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert Ms rights, to the end that if his contention be justified the Government service may be disturbed as little as possible and that two salaries shall not be paid for a single service.
*235 “ Under circumstances which rendered his return to the service impossible, except under the order of a court, the relator did nothing to effectively assert his claim for reinstatement to office for almost two years. Such a long delay must necessarily result in changes in the branch of the service to which he was attached and in such an accumulation of unearned salary that, when unexplained, the manifest inequity which would result from reinstating him renders the application of the doctrine of laches to his case peculiarly appropriate in the interests of justice and sound public policy.”
See also Nicholas v. United States, 55 C.Cls. 188, affirmed 257 U.S. 71. O’Neil v. United States, 56 C.Cls. 89; Morse v. United States, 59 C.Cls. 139; Norris v. United States, 55 C.Cls. 208, affirmed 257 U.S. 77; Eberlein v. United States, 53 C.Cls. 466, affirmed 257 U.S. 82, 84; Wilmeth v. United States, 64 C.Cls. 368.
The petition is dismissed. It is so ordered.
Williams, Judge; LittletoN, Judge; GeeeN, Judge; and Booth, Chief Justice, concur.