Littleton, Judge,
delivered the opinion of the court:
Plaintiff took a Civil Service examination and on December 27, 1941, was appointed to the position of clerk-typist, *188 CAF-2, in the Philadelphia Signal Depot, War Department. On March 16,1942, his appointment was converted to a war-service appointment. On June 21, 1944, he was employed as a CAF-5 with an annual salary of $2,000, and was reassigned to permanent status as a historical clerk. During July 1944 he was assigned to duty as assistant to the employee who was acting as chief clerk of the Property Disposal Division.
On August 4, 1944, plaintiff was notified by the assistant officer in charge of the Civilian Personnel Branch that the position which he then held as assistant to the Property and Supply Officer was abolished; that he was to continue in a work status until the close of business on September 3, 1944, and then report to the Civilian Personnel Branch for clearance. Effective September 6, 1944, plaintiff’s services were terminated.
September 29, 1944, plaintiff wrote to the United States Civil Service Commission, Washington, D. C., protesting his dismissal. The Commission wrote plaintiff, October 28, 1944, that his appeal had been forwarded to the Third Civil Service Region in Philadelphia for action. On November 30, 1944:, the Regional Director of the Third Civil Service Region sustained plaintiff’s protest and wrote to the Personnel Director of the Philadelphia Signal Depot as follows:
We have investigated the circumstances involved in terminating the services of Daniel Simon of your agency.
In a discussion of the case with Lt. Perkins, Mr. Blod-gett, Miss Price of your agency, and Mr. Nemshick of our Classification Division, the following agreements were reached:
The “abolishment” of Mr. Simon’s position as Assistant to Miss Poth was, in effect, only a theoretical abolishment. Since the position of Assistant to Miss Poth as such was not officially and legally established as a position, there could, in fact, be no abolishment of it.
Under the regulations set forth in Departmental Circular No. 431, dated July 31,1943, it is noted that certain rules must be followed in the “firing” of employees when reductions in force are effected in an agency. Under the definitions in these regulations, the action taken against Mr. Simon did constitute a reduction in force action, as was agreed at the conference. Even assuming the official *189 establishment of the Assistant position to which Mr. Simon was detailed, these regulations would have had to be applied.
Under the regulations, the abolishment of a position does not necessarily mean that the services of the incumbent of the position being abolished be terminated automatically. In fact, the regulations require among other things, consideration of areas of competition, seniority, efficiency rating, etc., of other employees at the same competitive level. The extent of the consideration of these factors is clearly outlined in Departmental Circular No. 431.
Since the action taken by your agency was not in accord with these regulations, we request that you reinstate Mr. Simon in the last official position to which he could be properly assigned and from which position he was legally entitled to salary payment. From the facts presented to us, it appears that this position is that of a Historical Clerk CAF-5. The final determination of the position to which he should be reinstated, however, rests with your office.
It was implied, during our conference on this case, that your office contemplated taking action to separate Mr. Simon “for cause.” The Civil Service Commission has no jurisdiction over such action, except as provided under Rule XII of the Civil Service Rules and Regulations. Before such action is instituted by your office, the recommendation of this office as to reinstatement of Mr. Simon, must be complied with.
Plaintiff was reinstated in the employ of the Philadelphia Signal Depot on December 11,1944, and on the same day was presented with a formal statement of charges against him. Plaintiff was suspended for a period of five days pending his reply in writing to the charges. His reply was not approved, and his services were terminated for unsatisfactory performance of duty, effective December 16,1944.
This case does not involve the validity of plaintiff’s second dismissal; he sues only to recover salary which would have been paid him had he been retained in defendant’s employ from the date of his wrongful dismissal on September 6, 1944, to the date of his reinstatement on December 11,1944.
Defendant concedes that plaintiff was discharged in violation of the Civil Service regulations contained in Circular 431 (finding 6), but contends that such action by the Govern *190 ment did not give rise to a cause of action by plaintiff for salary during the period of bis separation from the service.
Section 1491, U. S. C., Title 28, Eevised, provides, among other things, that this court shall have jurisdiction to render judgment upon any claim founded upon any act of Congress, or upon any regulation of an executive department.
This claim of plaintiff for the salary of a Civil Service position for three months and five days is based upon the denial to him of a certain right which was admittedly accorded to him by the regulations referred to, which were made by the President and the Civil Service Commission under and pursuant to the authority of the Civil Service Act of 1883 (22 Stat. 403; 5 U. S. C. 633). The claim is founded upon the regulations and also upon the Act of 1883, and is, therefore, within the jurisdiction of the court, expressly conferred by Congress. The defendant does not dispute the validity of the regulations under the Act of 1883, nor does it question the court’s jurisdiction to hear and consider the claim under 28 U. S. C., Revised, § 1491, supra. Its only defense to the claim is based upon the argument that the regulations, and the Act of 1883 under which they were made, were not intended to create rights enforceable by this court through a money judgment. Accordingly, the first question to be determined is whether the regulations here involved were made pursuant to authority of the statute and, therefore, were intended to have the force and effect of law. It is our opinion that the regulations were fully authorized by law and were intended by their own terms and by the Act of 1883 to have the force and effect of law; otherwise, the regulations would have contained discretionary authority and there would have been no point to the command by Congress that “it shall be the duty of all officers of the United States in the departments and offices to which such rules may relate to aid, in all proper ways, in carrying said rules * * * into effect.” It is not necessary, to the jurisdiction of this court to render a money judgment based upon rights conferred, that the statute, contract, or regulation upon which the claim is founded contain a provision that denial of a legal right thereunder shall give rise to a cause of action for compensation or damages. This matter is taken care of by the broad jurisdiction con *191 ferred by § 1491, U. S. C., Title 28, supra. United States v. Wickersham, 201 U. S. 390.
The declared purpose of the Civil Service Act of 1883 was “to regulate and improve the Civil Service of the United States.” The Act expressly delegated to the President and the Civil Service commissioners full authority to make suitable rules for carrying the Act into effect, and we think the regulations here involved were clearly within the intent and purpose of the Act. The statute further made such rules, when promulgated, mandatory upon the officers of the departments and offices of the United States, and indicated that said rules should, among other things, cover removals. Sec. 2, of the Act of 1883, provided in part as follows:
That it shall be the duty of said commissioners:
Finsp. To aid the President, as he may request, in preparing suitable rules for carrying this act into efleet, and when said rules shall have been promulgated it shall be the duty of all officers of the United States in the departments and offices to which any such rules may relate to aid, in all proper ways, in carrying said rules, and any modifications thereof, into effect.
SECOND. And, among other things, said rules shall provide and declare, as nearly as the conditions of good administration will warrant, as follows:
*
Eighth, that notice shall be given in writing by the appointing power to said commission of the persons selected for appointment or employment from among those who have been examined, of the place of residence of such persons, of the rejection of any such persons after probation, of transfers, resignations, and removals, and of the date thereof, and a record of the same shall be kept by said commission. * * *
FOURTH. Said commission may make investigations concerning the facts, and may report upon all matters touching the enforcement and effects of said rules and regulations, and concerning the action of any examiner or board of examiners hereinafter provided for, and its own subordinates, and those in the public service, in respect to the execution of this act.
We are convinced from a study of the Civil Service Act of 1883 and the above-quoted provisions in particular, that the regulations here involved (known as Departmental Cir *192 cular 431) were issued for the purpose of carrying the Act into effect by providing for the orderly removal of Government employees in the event of a reduction in force; that they were clearly authorized by the Act and that such regulations had, and were intended by the Act to have, the force and effect of law. United States v. Wickersham, supra.
In support of its argument that no enforceable right was created under the regulations, counsel for defendant refers to United States v. Babcock, 250 U. S. 328, holding this court to be without jurisdiction where the statute expressly referred the claim involved for final determination by the Treasury Department, but defendant is unable to find any language in the Civil Service statutes or in the regulations contained in Departmental Circular 431, referring claims, such as we have here, to an executive department for final determination, nor does it point to any evidence of an intention by Congress to vest final authority with reference to such questions in an administrative agency (Willamsport Wire Rope Company v. United States, 277 U. S. 551). We consider defendant’s reference to Roden Coal Company, Inc. v. United States, 95 C. Cls. 219, too far-fetched to warrant discussion here.
Defendant’s position is based entirely upon an inference which it seeks to draw from the absence in the Act of 1883 of an express provision that the denial of a right under a regulation, duly made pursuant to that Act, shall entitle the employee concerned to sue in this court. We think it is obvious that such an express provision was not necessary since Congress knew, in 1883, that it had already expressly given this court jurisdiction to hear, determine, and enter judgments upon such claims. If this court does not possess authority in a case such as the present one to enter judgment compensating an employee who has been illegally deprived of his position under a regulation made with reference to a specific subject matter pursuant to the positive command of a statute, the provision in the general jurisdictional act expressly conferring jurisdiction to enter judgment upon any claim founded upon such a regulation is meaningless, except where Congress expressly states anew each time it authorizes regulations or delegates authority to regulate certain matters by regulations, that legal rights accruing under such *193 regulations may be enforced by suit in this court. Cf. Aycock-Lindsey Corporation v. United States, 171 Fed. (2d) 518, 520, 521.
While paragraph Fourth of Sec. 2 of the Act of 1883, above-quoted, provided that the regulations made thereunder should provide for investigations by the Commission concerning the facts touching the enforcement and effects of the rules and regulations and concerning the action of those in the public service, in respect to the execution of the Act, the statute did not vest in the Commission, final jurisdiction and authority to decide the question here involved as to the right of the Civil Service employee concerned, to the salary of the position to which he was entitled under the regulations made pursuant to the Act.
The statute (28 U. S. C. 1491) outlining the general jurisdiction of this court and the Civil Service Act of January 16, 1883, supra, are “in pari materia” and should be construed together. It is a rule of interpretation that those statutes which relate to the same person or thing or the same class of persons or things ought all to be taken into consideration in construing any one of them to ascertain the intention of Congress. If the subj ect matter or thing included in the subsequent statute be within the reason of the former, it should be taken to be within the meaning thereof.
We must assume that Congress enacted the Civil Service Act of 1883 with full knowledge of the terms of the statute defining the jurisdiction of this court, and that since jurisdiction had, twenty years prior to that date, been vested in this court to render judgment upon any claim founded upon a regulation of an executive department, Congress did not consider it necessary to again declare that rights created by the Act of 1883 and the regulations thereunder, could be litigated in and determined by this court. That Congress intended in our general jurisdictional act that this court should have authority to determine and enter judgments upon claims for salaries in cases such as this one, is clear from the many cases that have been decided upon that subject and by the express provision in Sec. 24, subdivision Twentieth, of the Act of March 3, 1911 (36 Stat. 1091, 1093; 28 U. S. C. 41 (20)), taking away from the district courts concurrent *194 jurisdiction of suits against the United States for fees, salary, or compensation.
Since, as we have shown, Congress did not, in the Act of 1883, or any other Act on the same subject, vest in any other tribunal or agency the right or authority finally to decide the question now before us as to plaintiff’s right under the facts to the salary of his position, and since jurisdiction had been conferred upon this court many years before 1883 to enter judgments upon such claims, we think the plaintiff is entitled to recover the salary in question if the facts show, as they clearly do in this case, that during the period involved he was illegally deprived of the position he had held and the salary thereof under the terms and conditions of the Act of 1883 and the regulations made and promulgated thereunder.
In addition to provisions hereinabove quoted from Sec. 2 of the Act of 1883, that section further stated that the regulations should provide and declare — “Fifth, that no person in the public service is for that reason under any obligation to contribute to any political fund, or to render any political service, and that he will not be removed or otherwise prejudiced for refusing to do so.” And Sec. 8 provided that “No person habitually using intoxicating beverages to excess shall be appointed to, or retained in, any office, appointment, or employment to which the provisions of this Act are applicable.”
We are of the opinion that the conclusion we have reached as to the authority of the court to enter judgment under the facts on plaintiff’s claim, is in no way weakened by virtue of par. Fifth of Sec. 2, par. SecoND, which specified that the regulations of the Commission shall provide, “among other things,” against removals of persons from the classified Civil Service for failure to make political contributions, and Sec. 8 which prohibits the employment or retention in the service of any person habitually using intoxicating beverages to excess. These provisions were obviously incorporated in the Act by Congress — in connection with its grant of authority to make suitable regulations to regulate the Civil Service, and its declaration, in effect, that they should have the force and effect of law — to deal with known abuses or *195 practices which were known to Congress at the time the Act was being considered. We think these provisions, when considered in connection with the Act as a whole, show no more than that Congress considered that these matters or practices could and should be dealt with by a positive command rather than leaving them to be the subject of a regulation under the general power and authority conferred. If the regulations in question, conflicted in any way with par. Fifth of Sec. 2, Second, or Sec. 8, such regulations would, of course, be without authority and therefore invalid. Since, however, the purpose of the Act was, as we have said, to improve and regulate the Civil Service, and the Commission was empowered to issue rules and regulations to carry out the broad purposes of the Act and the specific items or things mentioned in Sec. 2, including “removals” (par. Eighth), this regulation, which does not in any way conflict with the specific prohibitions contained in Sec. 2, par. Fifth, or Sec. 8, is, we think, clearly within the intent of the statute.
In the circumstances of this case and in view of the language of the Act as a whole, we think the provisions of par. Fifth of Sec. 2 and Sec. 8, do not require the application of the maxim expressio unius est exdusio alterius. As pointed out by the court in Fazio v. Pittsburgh Rys. Co., 321 Pa. 7; 182 A. 696, this maxim is not of universal application, but is to be applied only as an aid in interpreting statutes in arriving at intention and not to defeat apparent intention. It is only one of the many well-known rules of interpretation to be applied in a proper case. The maxim, as a general principle of construction, is based entirely upon the probable intention of the legislature, hence, its application in a particular case must be weighed against other rules of construction which may be more nearly applicable in the circumstances. This maxim or principle of construction does not apply where it sufficiently appears from a consideration of the general purpose and policy of the statute and its provisions as a whole, that things such as we find in paragraph fifth of Sec. 2 and in Sec. 8, of the Act of 1883, were expressly mentioned for another reason or merely because of caution. Brown v. Buzon, 24 Ind. 194; Woosley v. Culp, 74 N. Y. 82. The rule should be applied with caution. In State ex rel *196 Curtis v. DeCorps, 134 Ohio St. 295 (16 N. E. (2) 459), the court said:
This maxim properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment * * * The maxim of interpretation is often helpful but its wise application varies with the circumstances.
In attempting to distinguish our decision in Elchibegoff v. United States, 106 C. Cls. 541, defendant states that the implication therein of a legal cause of action for salary arising from non-compliance with the provisions of the Act of August 24, 1912 (37 Stat. 555), was on the ground that the basic purpose of those provisions was to protect Civil Service employees against arbitrary action by officials. It is argued that the regulations contained in Departmental Circular 431 were not promulgated for the protection of Civil Service employees, but rather for the purpose of facilitating Government recruiting of employees in wartime. We cannot agree. While it is true that Executive Order No. 9063, authorizing the Civil Service Commission to prescribe regulations in connection with the recruitment, placement and changes in status of personnel, was issued for the purposes stated, it is our opinion that the regulations set forth in Departmental Circular No. 431, issued pursuant to such Executive Order and providing for the manner in which reductions in force should be made, were clearly designed to protect employees. By their terms the regulations establish retention preferences based on veteran status, type of appointment, length of service, and efficiency ratings, thus insuring the greatest measure of protection and the fairest treatment to the employees who were recruited to work for the Government in wartime. The regulations further provide that any employee whose discharge or suspension is found to be in violation of the rules laid down must be reinstated. The large war agencies were staffed by persons holding all types of appointments, permanent civil service, war service, and tern- *197 porary, some with veteran status and some without, some having many years of Government service and some having a few months. Without some such regulation for the administration and giving effect to the intent and purpose of the Civil Service statutes, especially in a time of sharp reduction in force, qualified Civil Service employees who had made a career of Government service might have lost their jobs, while employees of only a few months might have been retained. While a regulation guaranteeing the retention of qualified permanent personnel of high efficiency would undoubtedly be to the benefit of the Government, it can hardly be said that the employees themselves do not benefit equally or more.
Defendant attempts a further distinction by arguing that an employee separated from the Government service for incompetence (Act of August 24, 1912, supra,) is in a worse position than one separated because of a reduction in force, and that fairness requires that the former only be given an opportunity to defend himself. We see no validity to such reasoning. A person who is discharged from his job is unemployed, whether it be because his employer no longer needed his services or because his employer was dissatisfied with his services. It seems to us that the person who is employed by a Government agency faced with the necessity of making a reduction in force is entitled to as much consideration and protection in his job as the person about whose work or character there may be some serious question. Cases cited by defendant relative to the right of the Government to abolish positions without incurring obligation, are not applicable here since it is conceded that plaintiff’s position was not abolished.
As an additional ground for concluding that no legal cause of action for salary was intended to be conferred by the reduction in force regulations, defendant calls our attention to a recent amendment to the Act of August 24, 1912 (Act of June 10, 1948; Pub. Law 623, 62 Stat. 354), which provides, among other things, that an employee wrongfully discharged or suspended in connection with a reduction in force and later reinstated on the ground that such removal was unwarranted, shall be paid compensation *198 for the period of his removal. Defendant quotes from the report of the Senate Committee on Civil Service (S. Rep. 414, 80th Cong., 1st sess.) wherein it is stated that under the present law and regulations, a person improperly separated from the service and then reinstated “cannot secure compensation for the period in question.” Defendant says this report proves that Congress recognized that under existing law, an employee so removed had no right of action for salary. We think a careful reading of the Committee reports of both the House and Senate in connection with the passage of this Act shows that what was referred to was a rule of administration by Government accounting officers, called specifically to the attention of the House Committee in a letter from the Acting Comptroller General, that in the absence of specific statutory authority therefor, compensation may not be paid to an employee for a period of suspension during which time no duty is performed, regardless of whether the employee is later restored to duty. The above-mentioned statement in the Committee report refers merely to the known inability of the hiring agency, under the rules of the Comptroller General, to pay for services not performed. It has nothing to do with an employee’s right to sue the Government for such compensation when it has been determined that he has a right to his position. It is obvious that the Committees were not discussing the jurisdiction of this court. It is interesting to note that a similar amendment was made applicable to persons wrongfully discharged for cause under the Act of August 24, 1912, and that the remarks of the Committee quoted above applied equally to such persons. Prior to the Committee hearings, this court had decided that a person discharged in violation of the provisions of the Act of 1912 had a cause of action to recover his salary. Elchibegoff v. United States, supra. We see no alternative to concluding that the plaintiff herein also has a cause of action to recover his salary for the period of time he was wrongfully removed from his job in violation of the valid regulations under the Civil Service statutes governing reductions in force. United States v. Wichersham, supra.
*199 Defendant’s next contention is that, assuming plaintiff to have a cause of action for his salary, he cannot recover because he was not willing, ready and able to perform the duties of his position during the period of his separation. In support of this contention defendant points to testimony by some of plaintiff’s supervisors that his attitude was uncooperative and his work often unsatisfactory (although plaintiff was never given an unsatisfactory efficiency rating) and urges that in view of such evidence plaintiff cannot be found to have been willing, ready and able to perform the duties of his position, a finding requisite to a government employee’s suit for salary under the circumstances in this case. In the case of Nicholas v. United States, 55 C. Cls. 188, affirmed 257 U. S. 71, cited by defendant-in support of this argument, it appears that the plaintiff therein was physically and otherwise capable of discharging the duties of the position from which he was wrongfully suspended, but that he had never applied for reinstatement nor taken any steps to have his dismissal revoked. More than three years after his discharge, Nicholas filed a petition in this court to recover compensation from the date of his dismissal and it was held that his claim was barred by laches. There was no finding-in that case that plaintiff was unwilling or unable to perform his work. In the instant case there is no evidence that plaintiff was unwilling or unready to discharge the duties of his position. We are not disposed to find that plaintiff was unable to perform his duties merely on the basis of witnesses’ testimony that his work was in fact worse than indicated by the efficiency ratings given him by those same witnesses. The official ratings made in due course are entitled to greater weight.
Finally, defendant urges that plaintiff’s claim is barred by laches in that he did not institute this action for salary until nearly two years after his discharge in September, 1944. We cannot agree. Plaintiff’s services were first terminated on September 6,1944. On September 29,1944, plaintiff protested his dismissal to the Civil Service Commission. On November 30, 1944, that Commission, having completed its investigation, informed the Philadelphia Signal Depot, *200 plaintiff’s employer, that plaintiff had been discharged in violation of Civil Service regulations and must be reinstated. Plaintiff was reinstated on December 11, 1944. Plaintiff’s claim is for his salary only during the three months and five days between the dates of his discharge and reinstatement. It seems to us that plaintiff promptly took the proper steps to establish his right to his position, which steps brought about his reinstatement. The amount of plaintiff’s claim for salary was fixed as of the date of his reinstatement and any subsequent delay in bringing this action could not impose any additional burden upon the Government. In these circumstances the defense of laches is not applicable.
During the year and a half following his reinstatement plaintiff was not idle. He demanded his salary from his employing agency, from the Civil Service Commission and from the General Accounting Office. Upon final refusal by the Comptroller General, he brought this action. On the question of laches, the law is well-settled that delay alone will not necessarily preclude relief. There must be some inequity present, founded upon a change in the condition or relations of the property or parties so that the party pleading laches has been injured by the delay. Galliher v. Cadwell, 145 U. S. 368; Brissel v. Knapp, 155 Fed. 809. In order to sustain the defense of laches in this case it must appear that plaintiff’s delay in bringing his suit prejudiced the defendant. The only delay which could have harmed the defendant would have been a delay by plaintiff in establishing his right to his position and bringing about his reinstatement since the longer the period between his dismissal and reinstatement, the larger would be his claim for salary. The cases cited by the defendant involved circumstances where plaintiff delayed in asserting his rights, to the prejudice of the Government, the delay causing a larger claim to result than if plaintiff had acted promptly. Those cases are not applicable to the facts in this case. Goodwin v. United States, 76 C. Cls. 218; Norris v. United States, 55 C. Cls. 208, affirmed 257 U. S. 77; Nicholas v. United States, supra.
The Government has failed to show that it has been injured in any way by plaintiff’s delay of a year and a half in *201 bringing this action, and the defense of laches must, therefore, fail.
On the facts and for the reasons stated, we are of opinion that plaintiff is entitled to recover $642.09, which amount the General Accounting Office reports would have been his salary for the period of his wrongful suspension.
Judgment will be entered in favor of plaintiff for $642.09. It is so ordered.
Howell, Judge; Madden, Judge; and Jones, Chief Judge, concur.