Littleton, Judge, and Madden, Judge,
dissenting:
We would grant plaintiff’s motion for leave to amend her petition. The proposed amendment does not alter the nature or extent of plaintiff’s claim but merely alters the original petition to show the correct statutory authority for the regulations on which plaintiff bases her claim, i. e., the act of March 3, 1871, R. S. 1753, 16 Stat. 495, 514, the act of January 16, 1883, 22 Stat. 463, and R. S. 161, 5 U. S. C. 22, and to eliminate all reference to the Lloyd-LaFollette Act of August 24, 1912, 37 Stat. 539, 555. Although the majority is of the opinion that the proposed amendments, if permitted, would not affect the outcome of the case, adverse to plaintiff, we think plaintiff should be permitted to make the corrections desired in view of the fact that she may decide to seek a review of this court’s decision.
We do not agree with the conclusion reached by the majority to the effect that no claim within the jurisdiction of the court arises upon the violation by the United States of a Civil Service or departmental regulation prescribing the manner in which a probationary employee may be removed from her government position.
*564 The Civil Service regulation covering removals of probationary employees in effect at the time of plaintiff’s separation, on April 25, 1947, appears at 5 Code of Federal Regulations, §27.7 (d), 1946 Supplement, and provides in pertinent part as follows:
(d) Probationary appointment. A person selected for appointment shall be duly notified by the appointing officer and upon accepting and reporting for duty shall receive from such officer a notice of probationary appointment. The first year of service under this appointment shall be a probationary period: * * * If and when, after a full and fair trial, the conduct, capacity or efficiency of the probationer is not satisfactory to the appointing officer, the probationer shall, prior to_ the completion of his probationary period, be so notified in writing, with a statement of reasons, and this notice shall terminate his service. [Italics supplied.]
The above regulation was issued pursuant to Executive Order 9691 of February 4, 1946, 3 Code of Federal Regulations, 1946 Supplement, p. 95, and the Executive Order was issued under authority of sections 2 and 3 of the Civil Service Act of 1883, 22 Stat. 403, and section 1753 of the Revised Statutes. The regulation, to the extent quoted, had been in effect in almost identical form for a number of years. See 5 Code of Federal Regulations, § 7.2 (3), 1938 Supplement, issued pursuant to Executive Order 7915 of June 24, 1938, Rule YII Certification, 2 (c), 3 Code of Federal Regulations, 1938 Supplement, p. 52, issued pursuant to section 1753 of the Revised Statutes, the Civil Service Act of 1883, supra, and the authority vested in the President by the Constitution.
The departmental regulation relied on by plaintiff, and in effect at the time of her discharge, was War Department Civilian Personnel Regulation No. 60, issued pursuant to section 161 of the Revised Statutes (1773-1774), 5 U. S. C. § 22, which provides as follows:
The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it.
*565 Regulation No. 60 of the War Department, issued pursuant to the above statute, provided, among other things, that civilian personnel of that department, including those serving a probationary or trial period, should, upon discharge, receive a notice containing a statement of the reasons for the separation and an opportunity to reply thereto.
Neither the Civil Service regulation nor the War Department regulation was complied with upon the occasion of plaintiff’s discharge, and the question before the court is whether the violation of either or both of these regulations gave rise to a claim for pay against the United States within the meaning of section 1491 of Title 28 of the United States Code as a claim founded upon a regulation of an executive department. This question was decided in Simon v. United States, 113 C. Cls. 182.
With respect to the Civil Service regulation relied on by plaintiff, and issued pursuant to R. S. 1753 and the Civil Service Act of 1883, supra, the majority holds that such regulation prescribing the manner in which a probationary employee may be separated from government service does not have the force and effect of law, and its violation, therefore, does not form the basis for a claim for pay within the jurisdiction of this court. The majority points out that the 1883 Civil Service Act places no restriction on the right of an appointing official to remove employees appointed pursuant to that Act, except in § 13, which prohibits removals for withholding political contributions. The majority further states that the cases have uniformly held that regulations issued pursuant to the 1883 Act, which purported to place additional restriction on the power of removal, conferred upon employees covered by such regulation no rights against the United States which could be enforced in any court.
A careful study of the cases cited in the majority opinion persuades us that they do not justify the result reached by the court in the instant case.
In the Circuit Court cases relied on by the majority, and discussed hereinafter, the courts were concerned with a Civil Service procedural regulation promulgated by Executive Order of July 27, 1897, pursuant to the 1883 Civil Service Act. That regulation provided that no removal of an em *566 ployee in the Civil Service could be made except for just cause and must be upon written charges filed with the head of the department concerned, or other appointing officer, and with full notice to the employee, who must have an opportunity to make a defense. In each Circuit Court case cited the suit, was one for an injunction on the equity side of the court seeking restraint of the threatened removal in violation of the Executive Order, and the question for decision in each case was whether the procedural regulation gave to the employee in question such tenure of office as to confer upon him a property right in the office of which a court of equity could take cognizance. An early case involving this question was Carr v. Gordon, 82 Fed. 373 (1897). In that case Carr applied to the District Court for a writ of injunction to restrain his threatened removal from his position in the United States Post Office Department in Chicago, alleging that the proposed removal would be in violation of his rights under the Civil Service Act and the rules promulgated pursuant thereto by the President, particularly that rule issued through the Executive Order of July 27,1897, in that plaintiff had not received notice of the intention of the appointing official to remove him, with a statement of charges, and an opportunity to make a defense to the charges. The Circuit Court pointed out that the jurisdiction of a court of equity, unless enlarged by statute, is limited to the protection of property rights; that it exercises no jurisdiction in “matters merely political, illegal, criminal, or immoral,” citing and quoting from World's Columbian Exposition v. United States, 56 Fed. 654, and In Re Sawyer, 124 U. S. 200. In the latter case, the Supreme Court, at p. 210, had the following to say of the jurisdiction of a Court of Equity:
* * * It has no jurisdiction over the prosecution, the punishment or the pardon of crimes or misdemeanors, or over the appointment and removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government. [Italics supplied.]
*567 The Circuit Court reviewed the Civil Service Act of March 3, 1871, R. S. 1753, 16 Stat., Ch. 114, Sec. 9, 514, and the act of 1883, 22 Stat. 403,. and held that nothing in those Acts could be construed as conferring upon a person appointed thereunder any vested right in the government office or job; that the only restriction placed upon the power of removal from a government office or job was the provision in the 1883 law prohibiting removals for giving or failing to give political service, and the court concluded that the fact that the law prohibited removals for one particular cause was strong evidence to show that it was not designed to forbid removals for other causes. The court concluded that since the Civil Service statute under which the 1897 regulation in question was issued conferred on the plaintiff no vested property right in his job enforceable in a court of equity, the regulation could not do so and the injunction was denied.
The holding in Carr v. Gordon, supra, was followed in a number of subsequent cases involving the same issue, i. e., the jurisdiction of a court of equity to grant an injunction to restrain a threatened removal of a Civil Service employee in violation of the Executive Order of July 27, 1897. Flemming v. Stahl, 83 Fed. 940 (1897); Morgan v. Nunn, 84 Fed. 551 (1898); Page v. Moffett, 85 Fed. 38 (1898). In each case the court held that it had no jurisdiction to issue the injunction because no property right was involved and that jurisdiction to determine title to a public office belonged exclusively to courts of law to be exercised either by cer-tiorari, error or appeal, by mandamus, prohibition, quo war-ranto, or an information in the nature of a writ of quo war-ranto, according to the necessities of the case.
A conflict existed at that time between the holdings of circuits, as exemplified by the holding in Butler v. White, 83 Fed. 578 (1897), in which the court granted an injunction restraining a threatened removal in violation of the terms of the Presidential Order of July 27, 1897. This conflict was resolved in White v. Berry, 171 U. S. 366, in a decision upholding the conclusions reached by the courts following the holding in Carr v. Gordon, supra, i. e., that courts of equity have no jurisdiction over the appointment or re- *568 mo val of public officers and that the jurisdiction to determine title to public office belongs exclusively to the courts of law.
The question therefore arises: what, if any, application have the holdings above noted in the equity cases to suits for fay founded upon an alleged wrongful and illegal removal of a government employee covered by the Civil Service Act of 1883 (and not by the Lloyd-LaFollette Act of 1912) ?
In Ruggles v. United States, 45 C. Cls. 86 (1910), cited by the majority herein and quoted at some length, the cases of Carr v. Gordon, Page v. Mofett, and Morgan v. Nunn, supra, are relied on as holding that no vested right in a government office is acquired by virtue of certain executive regulations. Buggies had received an appointment in the War Department for a probationary period of six months. Before the expiration of the six months, Buggies was suspended by the quartermaster without pay on the ground that he was not qualified for the duties of the office, of which fact he was notified in writing. Thereafter charges were preferred, investigated, and sustained. Ultimately, his suspension without pay was ratified by the Secretary of War and Buggies was discharged. Buggies sued to recover his pay during the balance of the six-months’ probationary period because, he claimed, he could not legally be removed during that period under the Civil Service Act of 1883, and a Presidential regulation promulgated thereunder. The regulation relied on by Buggies was apparently that of January 2,1897, providing that a probationary appointee should receive a certificate of appointment for a probationary period of six months. See Brown v. United States, 39 C. Cls. 255. The court held that neither paragraph 4 of section 2 of the Civil Service Act, providing for a period of probation before any absolute appointment, nor the regulation of January 2, 1897, providing that the probationary period should be for six months, created in the probationary appointee a vested right in his job for six months and that the Government was free to remove him if his services were found to be inadequate or not needed. The particular regulation which was before the circuit courts in the cases of Carr, Morgan and Page, supra, was the 1897 Executive Order requiring that removals for cause be made *569 upon notice, written charges, and with an opportunity to defend, and such regulation was not before the court in the Buggies case for the reason, as pointed out by the court, pp. 89, 90, that the provisions of that regulation had been fully complied with:
But in the present case as the claimant was suspended without pay for inefficiency, upon written charges which were investigated and found to be true, we need not further consider the force and effect of the rules promulgated by the Executive in respect to removals from office during the probationary period of an appointee. The claimant was removed m compliance with the rules of the civil service promulgated by the President; and we may add that the rule prohibiting removals except upon written charges, with notice and an opportunity to defend, of itself implies removal for just cause during the probationary period.
This is not the case of a wrongful suspension of an employee by a subordinate officer, as in the Wichersham, case (201 U. S. 390), but was a suspension followed by removal for just cause upon written charges, as prescribed by the rules of the civil service promulgated by the President, and for that reason the demurrer is sustained and the petition dismissed. [Italics supplied.]
From the above it appears that the holding in the Buggies case is not authority for concluding that violation of the proced/u/ral reguiirements for removal of a government employee prescribed by an executive order issued under the 1883 Civil Service Act does not give rise to a claim for pay within the jurisdiction of the Court of Claims.
Another case relied on by the majority is that of Miller v. United States, 45 C. Cls. 509 (1910). In that case, Miller was discharged by the appointing official, the Public Printer. He was first suspended until final action could be taken on charges which had been preferred and of which he was advised, including the reasons therefor. The Public Printer, being satisfied that Miller’s removal would be for the good of the service, ordered his discharge. Subsequently, the Civil Service Commission held Miller’s discharge improper and recommended his reinstatement. Thereafter, the President of the United States also ordered Miller’s reinstatement, *570 which order was carried out. Miller did not base his claim for pay on the violation of any of the procedural requirements in the Civil Service rules, but on the fact that because the Civil Service Commission had found that his removal was not one that would promote the efficiency of the service, his removal was illegal and void. The court held that the power or discretion to determine whether the removal of a government employee would promote the efficiency of the public service was a matter left in the sole discretion of the Public Printer, as the appointing officer, and the fact that the Civil Service Commission disagreed with the Public Printer on this point did not render the discharged illegal. From all that appears in the opinion and the record in the Miller case, all procedural regulations applicable to his removal had been complied with.
A case which appears to be identical in most respects with the Miller case, supra, was that of Eberlein v. United States, 53 C. Cls. 466 (1918), affirmed, 257 U. S. 82 (1921). In the Eberlein case, the plaintiff, a customs employee, had been removed on charges, without pay, pending an investigation of such charges which were found to be established and Eberlein was discharged from the service. Two years later, the charges were reinvestigated and plaintiff was cleared thereof. The President directed reinstatement of Eberlein and thereafter Eberlein sued for back pay for the period of alleged wrongful suspension. In affirming the judgment of dismissal by the Court of Claims the Supreme Court noted that all the procedures required by law and regulation were complied with in connection with the suspension and removal of Eberlein, and the Court held that since all procedural requirements had been met, the action of the appointing official was not subject to revision in the courts, since it appeared that the discretion of the authorized officer had been exercised “as required by law.” With respect to the reinstatement order of the President, the Supreme Court held that the power of appointment and removal of this particular employee had, by act of Congress, been placed in the Secretary of the Treasury rather than in the President and that therefore the order of the President merely reinstated *571 Eberlein to eligibility for reappointment in the government service.[1]
Neither the Miller nor the Eberlein case holds that a government employee, whose removal is in violation of the procedural requirements of a regulation, issued pursuant to the 1883 Civil Service Act, has no claim for pay lost by reason of such removal.
We next consider the case of Wichersham v. United States, 201 U. S. 390 (1906), which, in our opinion, is the closest in point with the case under consideration in that it involved the right of a government employee to sue for back pay in the Court of Claims where his discharge was in violation of the procedural requirements of a regulation issued pursuant to the Civil Service Act of 1883. The regulation in question was not identical with the one in the instant case, but it did have two things in common with the regulation here involved: (1) it prescribed certain procedures to be followed in removing a government employee, and (2) it was issued under the authority of the Civil Service Act of 1883 and R. S. 1753.
Wickersham, an employee of the General Land Office, was summarily discharged by the Surveyor General on the ground that there was insufficient work in his office to warrant the continued employment of Wickersham. When, shortly thereafter, the Surveyor General requested permission of the Commissioner of the General Land Office to employ additional clerical help to cope with a backlog of work, he was advised that his action in dispensing with the services of Wickersham and others was improper for two reasons: (1) that there was no lack of sufficient work to be done at the time of the removals, and (2) that the Surveyor General had failed to comply with the Civil Service regulation requiring that written charges be filed with the depart *572 ment head or other appointing officer “of which the accused shall have full notice, and an opportunity to make defense.” [2] The Commissioner directed the Surveyor General to reinstate Wickersham and the others similarly discharged, and to file charges against them in the prescribed manner if he deemed that advisable. Wickersham was accordingly reinstated by the Surveyor General who then preferred charges against him and suspended him pending investigation. The charges were not sustained and the Commissioner of the General Land Office offered Wickersham another position outside the office of the Surveyor General. Upon his refusal of the offered position, the Commissioner made the suspension of Wickersham permanent. Thereafter, Wickersham brought suit in the Court of Claims for the pay lost during the period of his first suspension and up to the date of his reinstatement by the Surveyor General. Judgment for Wickersham was entered by the court, without opinion, and the Government appealed. In his brief in the Supreme Court, Wickersham took the position that although he was not appointed to office by the President, he was, on May 6, 1896, put under Civil Service by an executive order of that date and by the corresponding order of the Secretary of the Interior. The Government took the position that he was not in the Civil Service. Wickersham’s position was sustained by the Supreme Court. Next, he contended that although the power to remove accompanies the power to appoint, the power to suspend does not follow the power to remove. The Supreme Court did not sustain this contention. Wickersham then urged that, as a member of the Civil Service, he was entitled to the protection of the Presidential order of July 27, 1897, and the corresponding rule of the Civil Service Commission requiring that a removal be accomplished upon written charges filed with the head of the department, with full notice and an opportunity to defend, and that it was accordingly beyond the authority of a superior officer to remove or suspend a civil service employee *573 except in the manner prescribed in the order and rule. Our reading of the decision of the Supreme Court convinces us that these latter contentions of Wickersham were sustained.
Beginning on page 397, the Supreme Court discusses the scope of the Civil Service Act of 1883 to regulate and improve the Civil Service of the United States and states that its provisions “are broad and comprehensive.” The Court then held that both the regulation of May 6,1896, extending Civil Service coverage to certain officers and employees not theretofore covered, and the procedural regulation of July 27, 1897, providing for the manner in which their removals should be effected, were within the scope of the 1883 Act. With respect to the latter rule, the Supreme Court states at p. 398:
* * * He [Wickersham] was, therefore, entitled to the protection of the President’s order of July 27, 1897 (14 An. Eep. Civ. Serv. Comm. 133) : “No removal shall be made from any position subject to competitive examination except for just cause and upon written charges filed with the head of the department or other appointing officer, and of which the accused shall have full notice and an opportunity to make defense.” If the contention of the Government be correct, and the attempted suspension by the surveyor-general was equivalent to a dismissal from office, such action would run counter to the requirements of the Presidential order just quoted. The action of the surveyor-general was not upon written charges, and no notice or opportunity to make defense was given to the accused, as provided in that order. The appellee being entitled to the protection of this order, and to have notice of the charges preferred, and an opportunity to make defense, the attempted removal, if such it was, was without legal effect; * * *.
The Supreme Court then noted, as pointed out by the majority herein, that it was not passing on the question of whether the President or some other competent authority could have (with impunity) summarily removed or suspended Wickersham because that question was not before the Court. The question which the Supreme Court felt was before it was whether an employee who had been suspended by a subordinate official in a manner violative of the executive order of the President was entitled to the compensation pro *574 vided by law for the period of bis suspension, and tbe Court beld that he was so entitled.
We cannot agree with the interpretation by the majority of the 'Wichersham opinion as a holding that it involved only the removal of an employee by a subordinate officer “who had no authority to do so.” The subordinate officer in question, the Surveyor General, did have authority to bring about the removal of the employees under him, provided he complied with the procedures outlined in the executive order and the Civil Service rule. Furthermore, we cannot agree with the statement of the majority of what this court said in the Buggies case, supra, in distinguishing that case from the Wichersham case. What this court said of the Wichersham case in its opinion in the Ruggles case, was this:
This is not the case of a wrongful suspension of an employee by a subordinate officer, as in the Wichersham case (201 U. S. 890), but was a suspension followed by removal for just cause upon (written charges, as prescribed by the rules of the civil service promulgated by the President, and for that reason the demurrer is sustained and the petition dismissed.
Earlier in the Buggies opinion, the court distinguished the situation in Buggies from that in Lellmann's case, 37 C. Cls. 128, on the ground that Euggles, unlike Lellmann, was served with charges in writing and was given an opportunity to make defense. The facts in Lellmann's case were identical with those in the Wichersham case, and the holding of this court was specifically approved by the Supreme Court in its decision in the Wichersham opinion. Finally, the Court of Claims in the Buggies opinion did not consider the applicability of the 1897 executive order covering removals from government office upon the removal of a probationary appointee, for the express reason that the procedures contained in the 1897 order had been fully complied with in the Buggies case.
Until the decision in the instant case, the most recent decision of this court on the precise issue involved herein, was the case of Simon v. United States, 113 C. Cls. 182. In that case the majority of the court (four judges) held that a *575 government employee removed from Ms job in violation of a Civil Service rule covering reductions in force, and issued pursuant to section 2 of the Civil Service Act of 1883, had a claim for pay during the period of wrongful suspension within the jurisdiction of this court as a claim founded upon the regulation of an executive department, citing the Wicker-sham case.
In the Simon case, supra, the Government took the position that the Civil Service Act of 1883, and regulations issued thereunder, such as the reduction-in-force regulation involved in the Simon case, were not intended to create rights enforceable by the Court of Claims through a money judgment; that only where Congress expressly states in a statute authorizing regulations that violation of those regulations will give rise to a claim thereunder enforceable in the Court of Claims does this court have jurisdiction of a claim founded upon those regulations. In rejecting that contention, the court noted that the Civil Service Act of 1883 had been enacted some twenty years subsequent to the Act setting forth the jurisdiction of this court and, in enacting the 1883 Act and providing for the issuance of regulations thereunder, Congress was presumably aware that the Court of Claims had jurisdiction to render judgment on claims founded upon the regulations of an executive department, and did not consider it necessary to again declare that rights created under the 1883 Act and its regulations could be litigated in and determined by this court. While the Civil Service Act contained no provisions with respect to the procedures to be followed in removing employees from government service, regulations prescribing such procedures were certainly not in conflict with that statute, and a regulation promulgated to insure an orderly and fair manner of carrying out reductions in force was held to be a regulation or “suitable rule for carrying this act [1883] into effect.” Subsequent to the decision of this court in the Simon case, Congress enacted Public Law 623 of June 10, 1948, 62 Stat. 354, amending section 6 of the Lloyd-LaFollette Act of August 24, 1912, 5 U. S. C. 652. The 1912 Act had nothing to do with reductions in force, but the 1948 amendment provided in subpara- *576 graph (b) (3) that any person removed or suspended without pay in a reduction in force, who, after appeal to proper authority, was reinstated to duty on the ground that the removal or suspension was unjustified or unwarranted, should be paid the compensation denied him for the period of wrongful suspension. As noted in the committee reports, this authorization to grant back pay was not intended to affect the jurisdiction of the courts but rather to authorize the employing agencies to make such payments, the General Accounting Office having ruled that where an employee had not been in a duty status, the employing agency could not pay him.
The only ground upon which a removal during a reduction in force could be said to be “unjustified” or “unwarranted” would be that the Civil Service reduction-in-force regulation issued pursuant to the 1883 Act had not been followed. No statute of which we are aware provides for reductions in force or the manner in which they must be carried out. The reduction-in-force regulation itself cites as its authority the Civil Service Act of 1883 and Congress must have thought the regulation a valid and enforceable one to have provided in the 1948 Act that an employee discharged in violation thereof and later reinstated should be paid for the period of wrongful removal.
From our study of the cases mentioned herein above, we think the following observations are here pertinent. No Federal statute to date has conferred on a government employee holding an appointment under any of the Civil Service laws such a property right in the position to which he is appointed as will invoke the protection of a court of equity, since no such statute specifically denies to the President or some other appointing official the right of removal. Since no property right in a government job exists, equity will not enjoin the threatened removal of an incumbent in violation of a Presidential or Civil Service rule which prescribes the manner in which that removal must be made. In so holding, however, the courts of equity and the Supreme Court have, as hereinbefore mentioned, been careful to point out that in the event of an actual (as distinguished from threatened) removal of a government employee in violation of such an *577 applicable procedural regulation, the employee has an adequate remedy at law. Where the employee has been removed in violation of such a procedural regulation, he may seek a declaratory judgment in the District Court declaring his removal illegal because in violation of a procedural regulation, Borak v. Biddle, 141 F. 2d 278, cert. denied, 323 U. S. 738, and, upon the failure of the Government to reinstate him, the court will grant a writ of mandamus ordering such reinstatement. Because the District Court has no jurisdiction to order or award back pay, such an employee must then bring suit for pay in the Court of Claims. Borak v. United States, 110 C. Cls. 236.
While a government employee may not secure an injunction to restrain a removal which is in violation of a procedural regulation applicable to removals, once that removal is effected in violation of the procedural regulation, the courts have held such a removal illegal, and the Court of Claims has rendered judgment for pay lost during such wrongful removal. Lellmann v. United States, Wickersham v. United States, and Simon v. United States, supra.
It is of some significance that neither the briefs of the parties in the Supreme Court nor the Court itself in its opinion in the Wichersham case, made any mention of the holdings of the Supreme Court in White v. Berry, supra, or of the Circuit Courts in Carr v. Gordon, Page v. Moffett, Flemming v. Stahl, and Morgan v. Nunn, supra, although all of those cases involved the same procedural regulation of the President of July 27, 1897 which was involved in the Wichersham case. We think the reason for this is that the equity cases have no application to the issues involved in a suit for pay where the ground for recovery asserted is- the actual violation of a procedural regulation.
A regulation of an executive department which is not in conflict with existing law and which can be said to reasonably effectuate the purposes of the statute under which it was issued, is a regulation which has the force and effect of law and one upon which a claim within the jurisdiction of this court may be based. While it is true that the Civil Service Act of 1883 did not take from the appointing power the *578 right to remove those employees whom he had appointed to office except a removal for political reasons (other reasons have since been added by subsequent law), a regulation issued pursuant to that law which merely prescribes the maimer in which permitted removals shall be made does not seem to us to be a regulation in conflict or in excess of the 1883 statute. Such a regulation is not a restriction on the power to remove, but rather on the manner in which that power may be exercised. Such a regulation was held by the Supreme Court in the Wiclcersham case to be clearly within the scope of the broad provisions of the 1883 Civil Service Act.
From the pleadings and papers in the instant case, it appears that this case has much in common with the Wiclcer-sham case. Plaintiff in the instant case was not summarily removed by the head of the War Department any more than was Wickersham summarily removed by the Secretary of the Interior or by the President and accordingly the excerpt quoted by the majority herein relative to the power of the President or department head to dismiss an employee has no more application to this case than it had to the Wicker-sham situation. Plaintiff herein was removed by a Major Warren, a subordinate officer in the Army Finance Office, and like the Surveyor General in the Wickersham case, Major Warren failed to observe and comply with the procedural regulation of the Civil Service Commission expressly applicable to the removal of a probationary employee. We are of the opinion that the removal of Miss Watson was as illegal as that of Wickersham and that she is entitled to recover on her claim for pay founded upon a valid regulation of the Civil Service Commission.
With respect to Civilian Personnel Regulation 60 of the War Department, issued pursuant to section 161 of the Revised Statutes, we are of the opinion that such regulation also has the force and effect of law so that an employee removed in violation of the procedures prescribed therein has a claim cognizable by this court.
In Carter v. Forrestal, 175 F. 2d 364, cert. denied, 338 U. S. 832, Carter, a civilian employee of the War Department, was discharged because he willfully avoided payment *579 of Ms lawful debts. The discharge was made pursuant to a War Department regulation known as Orders T, issued pursuant to section 161 of the Eevised Statutes, and providing that any employee who willfully and without sufficient excuse or reason neglects or avoids payment of lawful indebtedness will be discharged with prejudice. Carter appealed to the United States Civil Service Commission under the provisions of section 14 of the Veterans’ Preference Act of 1944, 5 U. S. C. § 863, and the dismissal was sustained as not in violation of that Act. Thereupon, Carter brought suit for a declaratory judgment and requested an order in the nature of a mandamus requiring his restoration to his civilian position in the Department of the Army. Carter urged, among other things, that the regulation, Orders T, was invalid. In rejecting tMs contention, the Circuit Court stated, at page 366:
Neither do we find any merit in appellant’s contentions that the War Department regulation (Orders T) was invalid. There is both constitutional authority, Constitution, Article II, Section 2, and statutory authority, Sec. 161, R. S., 5 U. S. C. A. § 22, authorizing the Secretary of War to promulgate regulations specifying what shall be considered grounds for the dismissal of an employee. * * *
In Boske v. Comingore, 177 U. S. 459, the Court, speaking of a departmental regulation, issued pursuant to section 161 of the Eevised Statutes, stated, at page 470:
* * * In determining whether the regulations promulgated by him [Secretary of the Treasury] are consistent with law, we must apply the rule of decision which controls when an act of Congress is assailed as not being within the powers conferred upon it by the Constitution; that is to say, a regulation adopted under section 161 of the Eevised Statutes should not be disregarded or annulled unless, in the judgment of the court, it is plainly and palpably inconsistent with law. Those who insist that such a regulation is invalid must make its invalidity so manifest that the court has no choice except to hold that the Secretary has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress.
*580 The portion of Regulation 60 relied on by plaintiff prescribes certain procedures to be followed in the removal of civilian employees of the War Department, including probationary employees. We can see nothing in such a regulation which is inconsistent with law. The Lloyd-LaFollette Act merely provides that persons in the classified civil service shall be removed therefrom only under certain conditions and in a certain manner. That Act does not provide that persons not having classified status (such as probationary appointee, a temporary appointee or a war service appointee) may not be covered by Civil Service or departmental regulations prescribing substantially similar methods or procedures to be followed in bringing about their removal. In fact, the Act says nothing about the removal of persons not in the classified civil service. Accordingly, we are unable to see how a regulation issued pursuant to the 1883 Act or pursuant to Revised Statute, section 161, and not dealing with persons having classified civil service status, can be in conflict with the 1912 Act.
This plaintiff does not urge that she had classified civil service status at the time of her discharge in 1947, nor does she claim the benefits of the Lloyd-LaFollette Act. She does, however, claim that as a regularly appointed probationary employee she is covered by the Civil Service Act of 1883, the Civil Service regulation relative to probationary employees issued pursuant thereto, and by Civilian Personnel Regulation 60 of the War Department, issued pursuant to section 161 of the Revised Statutes.[3]
We are of the opinion that both regulations relied on by plaintiff are valid regulations of an executive department not in conflict with any existing law and that her discharge in violation of such regulations gave rise to a claim founded upon a regulation of an executive department cognizable by this court. We would accordingly grant plaintiff’s motion for a new trial. We would also give plaintiff leave to amend her petition to correct the errors in legal citations appearing in her present petition.

 The Constitution provides in Article II, section 2, clause 2; with respect to the powers and duties of the President, in part as follows:
“* * * and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: hut the Congress may by Lam vest the Appointment 0} such inferior Officers, as they thinh proper, in the President alone, in the Courts of Lam, or in the Beads of Departments.” [Italics supplied.]

 The full text of the regulation is as follows:
‘‘No removal shall be made from any position subject to competitive examination, except for just cause, and upon written charges filed with the head of the department, or other appointing officer, and of which the accused shall have full notice, and an opportunity to make defense.”

 Both regulations required that a probationary employee be notified in writing of the reasons why her conduct or capacity was not satisfactory.